375 So.2d 1360 (1979)
STATE of Louisiana
v.
Edward Lee GIOVANNI, Jr.
No. 64006.
Supreme Court of Louisiana.
October 8, 1979.
*1361 Carl A. Leckband, Jr., D. Michael Mooney, Lake Charles, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard K. Knapp, Jr., Dist. Atty., Adam L. Ortego, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.
We granted writs upon application of defendant, Edward Lee Giovanni, Jr. to review a pre-trial ruling of the district court denying his motion to suppress. In that motion defendant sought to suppress certain oral inculpatory statements made by him to deputies of the Calcasieu Parish Sheriff's Office and to a Deputy Louisiana Fire Marshall on grounds that the statements were not freely and voluntarily given and were made while defendant was being illegally detained. For reasons we will relate hereinafter, the ruling of the district court is reversed and the oral statements with the exception of defendant's statement on September 2, 1978 to Deputies Ogea and Hoffpauir are suppressed.
The statements defendant sought to suppress were made on September 2, 3, 5 (two statements) and 10, 1978 while defendant was being questioned concerning the murders of Paul Prejean, his wife Margaret and his son Jesse. The three members of the Prejean family were shot during the early morning hours of September 2, 1978 and their house burned in an apparent attempt to conceal the murders.
Defendant's first statement occurred on September 2, 1978 after deputies sought him for questioning when they learned that he was staying at the victims' house on the weekend of the murders. Defendant at that time voluntarily accompanied the deputies to the sheriff's office, was questioned for information concerning the murders for about twenty minutes, and was then returned to his home. Officers Ogea and Hoffpauir, who questioned defendant, testified that at that time defendant was not a suspect.
Defendant was again questioned late on the evening of the following day, September 3rd, after it was determined that the fire at the Prejean home was arson. Fire Marshall Elbert Welborn had requested that defendant be located for renewed questioning. Pursuant to this request, Deputy Chisholm of the Calcasieu Parish Sheriff's Department stopped defendant as he was returning home at about 11:00 p. m. that evening. After being advised of his rights, he was asked to accompany the officers to the sheriff's office for further questioning. Defendant was informed that if he refused to accompany the officers, he would be arrested as a material witness.
When defendant arrived at the sheriff's office, he was again advised of his rights, *1362 placed under oath by the fire marshall, and questioned. At the end of this session defendant was informed that the officials thought he was lying and that he would as a consequence be charged with giving false information concerning an arson, a violation of R.S. 14:54.1.[1] Defendant was then booked with the charge and held in the Calcasieu Parish jail.
While defendant was held in the parish jail he was questioned on three additional occasions. Allegedly in response to the defendant's request to talk, Deputies Ogea and Hoffpauir on September 5th questioned defendant around 9:00 that morning; he was again questioned that evening around 5:00 p. m. by Deputies Boyd and Thornton. On September 10th Deputies Boyd and Thornton discussed the case with defendant again. As a result of the statement made on September 10th an affidavit in support of a search warrant was executed and a warrant issued on that affidavit for a search of defendant's home. Subsequently defendant was charged with the first degree murder of the three victims and was indicted by the grand jury on October 5, 1978 for the three murders.
After hearing testimony on the motion to suppress, the trial court found that defendant had been arrested at the conclusion of the questioning on the night of September 3, 1978 and that this arrest, as a material witness and for providing false information regarding an arson, was lawful. The trial judge thus concluded that neither the non-custodial statement of September 2, 1978 nor the statements taken on and after September 3rd while defendant was in custody were in any way related to an illegal arrest. He also found that defendant's statements were freely and voluntarily given, following defendant's having been advised of his constitutional rights. The trial court's conclusion about the voluntariness of defendant's statements while questionable,[2] does not seem to be an abuse of discretion. We need not, however, pass on that ruling for it is our conclusion that the trial court's determination that defendant was lawfully arrested can not stand. We find that defendant was illegally arrested on September 3, *1363 1978 and that each of his statements, with the exception of that made on September 2nd before his arrest, was made as a direct consequence of the illegal arrest. Therefore these statements must be suppressed.
It is clear from the facts of this case that defendant was "arrested" on September 3rd, when the deputies of Calcasieu Parish took him into custody for questioning and not as the trial court concluded, after the interrogation that night. Under the settled jurisprudence of this state, an arrest is made when one person is taken into custody by another and there is actual restraint of that person. See La.Code Crim. Pro. art. 201. In State v. Sherer, 354 So.2d 1038, 1042 (La.1978) this Court observed that "it is the circumstances indicating intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer's statements: `You are under arrest,' that are determinative of when an arrest is actually made."
The testimony at the hearing on the motion to suppress indicates that when defendant was stopped for questioning, he was not free to leave, and he was told that he would be arrested as a material witness if he refused to accompany the deputies to the sheriff's office. Although Deputy Chisholm testified that defendant "agreed voluntarily" to go to the sheriff's office for questioning, he also stated that when defendant did so he had a shotgun pointed at him. Even after it was determined at the scene of the detention that defendant was unarmed, defendant was still guarded by a pistol.
The trial court's conclusion that defendant was legally arrested as a material witness was also erroneous. R.S. 15:257 provides that when the testimony of a witness is essential to either the prosecution or the defense and there are good grounds to fear that the witness may depart or be taken from the jurisdiction, a warrant may be issued for his arrest.[3] The provisions of this statute were clearly not followed in arresting defendant in this case. The testimony at the hearing on the motion to suppress indicates that no warrant was issued for defendant's arrest as a witness, nor was there an attempt to procure one. There was no prior judicial determination that defendant's testimony was essential and that there were good grounds to fear his departure from the jurisdiction;[4] defendant's arrest therefore can not be validated on this basis.
The state contends that even if defendant's arrest as a material witness was not valid, defendant's detention after the late night interrogation was supported by defendant's having been booked and arrested for lying under oath to the fire marshall, a violation of R.S. 14:54.1. That statute makes criminal the communication of false information "concerning an attempt or alleged attempt being made, or to be made, to commit either aggravated or simple arson." Even if we assume that defendant lied to the fire marshall, R.S. 14:54.1 is not applicable to his conduct. The false information defendant gave was not concerning an attempt or alleged attempt "being made, or to be made" to commit an arson. While defendant's conduct might have given the deputies probable cause to arrest him for perjury, a violation of R.S. 14:123, and under the rationale of State v. Wilkens, 364 *1364 So.2d 934 (La.1978)[5] might have provided probable cause for a valid arrest under the perjury statute, the fact remains that defendant's alleged perjury during this illegal detention was the direct result of his earlier illegal arrest.
In brief to this Court the state takes a position not seriously argued at the hearing on the motion to suppress and not relied upon by the trial court in its rulingthat defendant's initial detention on the night of September 3rd was a legal arrest supported by probable cause that the defendant was guilty of murder and arson. The testimony at the hearing however indicates that at the time of his arrest, the deputies had no information which would constitute probable cause that defendant committed the crime. In fact it appears from the testimony that it was because there was no probable cause to arrest defendant for the crime that defendant was initially arrested as a material witness.[6]
Having thus concluded that defendant's arrest was illegal, we can find defendant's inculpatory statements admissible only if we find that they were not the direct result of his illegal arrest. This Court, in State v. Scott, 355 So.2d 231 (La. 1978), has summarized the jurisprudence regarding suppression of confessions resulting from illegal arrests. In accordance with Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), a confession obtained as a direct result of an arrest without probable cause should be suppressed. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) requires the state, upon defendant's challenge that the confession resulted from the illegal arrest, to show that the confession is admissible by establishing either that the arrest was lawful or, if the arrest was unlawful, that the connection between the arrest and the confession was so attenuated that the confession could not properly be considered the fruit of the illegal arrest. Whether the confession is sufficiently attenuated from the arrest is a question to be determined in light of facts of each case. While Miranda warnings administered to a subject may be one factor in making the determination, it does not per se make the confession sufficiently attenuated from the illegal arrest. Other factors, such as the temporal proximity of the arrest and the confession, the presence of the intervening circumstances and the purpose and flagrancy of the official conduct are matters to be considered. State v. Scott, supra quoting Brown v. Illinois, supra.
In the instant case there is not sufficient attenuation between defendant's illegal arrest and his oral inculpatory statements for us to find that the statements are admissible. In addition to his having been illegally arrested and notwithstanding the fact that he was advised of his constitutional rights, defendant's inculpatory statements were a direct result of and not at all unrelated to his unauthorized custodial interrogation.[7]
Defendant's arrest for questioning was under circumstances much like those which occurred in Brown v. Illinois, supra:
"The arrest, both in design and in execution was investigatory. The detectives embarked upon this expedition for evidence in the hope that something might turn up. The manner in which Brown's arrest was effected [officers in his apartment waiting his arrival with shotguns] gives the appearance of having been calculated to cause surprise, fright, and confusion."
As set forth in Brown the degree of official misconduct plays a critical role in determining whether the statements are sufficiently *1365 attenuated to be admissible. In this case, as in Brown, defendant's arrest was calculated to produce evidence connecting him with the crime. The officers admittedly had no cause to arrest defendant for murder so they held him on other charges until they were able to secure inculpatory statements and additional evidence before charging him with the crime. Because defendant's statements, with the exception of that given on September 2nd when defendant voluntarily accompanied deputies for questioning, were the direct result of the illegal arrest, we find that they must be suppressed.

Decree
For the foregoing reasons the trial court's denial of defendant's motion to suppress is reversed in part and defendant's inculpatory statements, with the exception of that given on September 2nd, are suppressed. The case is remanded for further proceedings not inconsistent with this opinion.
RULING REVERSED IN PART; CASE REMANDED.
SUMMERS, C. J., and MARCUS and BLANCHE, JJ., dissent.
NOTES
[1] Louisiana Revised Statute 14:54.1 provides:

"Communicating of false information of arson or attempted arson is the intentional impartation or conveyance, or causing the impartation or conveyance by the use of the mail, telephone, telegraph, word of mouth, or other means of communication, of any threat or false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to commit either aggravated or simple arson.
Whoever commits the crime of communicating of false information of arson or attempted arson shall be imprisoned at hard labor for not more than twenty years."
[2] At the hearing on the motion to suppress defendant argued that the statements made while he was in custody between September 3rd and September 10th were not free and voluntary for the reason that he was experiencing severe drug withdrawal symptoms during this period. Defendant further argued that the statement of September 10th should be suppressed because it was induced by Deputy Boyd's offer of Demerol if defendant co-operated in the investigation.

Although the various deputies who questioned defendant during his incarceration testified that he had no apparent drug problem which would have prevented him from giving a free and voluntary confession, there was evidence that defendant was indeed addicted to drugs and was experiencing withdrawal when he gave the statements. Mary Donahoe, the nurse in charge of records at the Calcasieu Parish jail, testified that on September 5th defendant was given 50 mg. of Librium for what she described as "possible withdrawal" symptoms. Mrs. Donahoe testified that at the time she administered the drug to defendant he appeared to be suffering from "nerves" and complained of having a "dry mouth."
Additionally Dr. Charles M. Smith testified that on September 10th he prescribed Demerol for defendant on the request of Deputy Boyd and concluded from the conversation with Deputy Boyd that the prescribed drug was for an individual experiencing severe withdrawal. Dr. Smith further testified that since the 12th day of September defendant has received various medications including Darvon, Limbitrol, Prolixin, and Tylenol. Similarly defendant's father testified that he was present when defendant was questioned on that date. He stated that defendant stopped the questioning and requested that the deputies obtain drugs for him. Deputies allegedly told defendant that if he co-operated, he would be given the requested drug. Shortly after defendant gave his inculpatory statement. Deputy Boyd called Dr. Smith and obtained a prescription of Demerol for defendant.
[3] Louisiana Revised Statute 15:257 provides:

"Whenever it shall appear, upon motion of the district attorney or upon motion of a defendant supported by his affidavit, that the testimony of any witness is essential to the prosecution or the defense, as the case may be, and that there are good grounds to fear that said witness may depart or be taken from the jurisdiction of the court, a judge, as defined in Article 931 of the Code of Criminal Procedure, shall issue a warrant for the arrest of the witness. The witness shall be arrested and held in the parish jail, or such other suitable place as shall be designated by the court, until he gives an appearance bond as provided for defendants when admitted to bail, or until his testimony shall have been given in the cause or dispensed with."
[4] Deputies Ogea and Boyd testified that defendant's arrest was sought because he frequently traveled to Houston and they were afraid that he would leave the jurisdiction. Under R.S. 15:527 this determination should have been made by a judge, not the arresting officers.
[5] In State v. Wilkens, supra this Court held that probable cause for one offense could justify an arrest for other cause provided that the arrest was not a pretext for an illegal search.
[6] To defense counsel's question, ". . . in other words . . . Mr. Giovanni was picked up on Sunday, September the 3rd under the guise of a material witness, but actually as a suspect, correct?" Ogea replied, "Yes sir."
[7] For a description of the circumstances under which defendant made these statements during the eight day custodial interrogation, see footnote 2.