| j McKAY, Judge.
STATEMENT OF THE CASE
By bill of information dated December 14, 1998, Alfred Smith and Melissa Lazard were each charged with one count of being in possession of a dangerous weapon while in possession of cocaine and with one count of possession of more than 28 grams, but less than 200 grams, of cocaine; and, they both pleaded not guilty. The trial court denied their motion to suppress the evidence; and they filed an emergency writ application with this court (99-K-1056), which was denied on April 30, 1999. On June 23, Smith pleaded guilty as charged to the possession of a dangerous weapon count and guilty to attempted possession of more than 28 grams, but less than 200 grams, of cocaine. Ms. Lazard pleaded guilty to possession of cocaine, and the State entered a nolle prosequi on the possession of a dangerous weapon count. Both the defendants entered their guilty pleas pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On the same date, *644 the trial court sentenced Smith to five years at hard labor without benefit of parole, probation, or suspension of sentence on both counts to run concurrently with each other. The trial court ordered that a presentence investigation be conducted with regard to Ms. Lazard; and, on October 20, 1999, the trial court sentenced her to five years at hard | ¡.labor, which was suspended, and five years active probation with the conditions that she submit to drug testing, obtain substance abuse counseling, maintain.full time employment, attend parenting classes, and pay costs. The record was lodged in this court on August 28, 1999, and it was supplemented October 15 and December 6, 1999. The defendants filed a brief on September 24, 1999. The State of Louisiana has not filed a brief in this matter.

STATEMENT OF THE FACTS

Sergeant Eddie Selby testified that on December 2, 1998, he received information from an untested confidential informant who told him that Alfred Smith lived at 2745 St. Peter, drove a red Ford F-150 pickup truck, and that each night between 11:45 p.m. and midnight, he delivered drugs to various individuals in the 2300 block of Aubrey Street. Selby testified that the 2300 block of Aubrey was well-known for large quantities of illegal drugs and that he was familiar with Smith from other informants. Selby set up surveillance and saw a red Ford F-150 pickup truck parked in front of 2745 St. Peter. At 11:40 p.m., he saw a man, later identified as Alfred Smith, walk out of the front door at 2745 St. Peter, walk to the back of the truck, put something in his mouth, get into the truck, and drive away. Selby followed Smith for six blocks, and he testified that he then elected to conduct an investigatory stop at the corner of North Broad and Ursuline. Selby stated that Smith’s vehicle was stopped by use of the “boxed-in maneuver” in which one police car was in front of the truck and another one behind the truck.
Selby testified that as he alighted from his police unit, he saw Smith quickly place something in his mouth and chew it nervously. Selby further testified that Smith refused to open his mouth and that he informed Smith that he was conducting an investigation and asked Smith if he resided at 2745 St. Peter. Smith 13answered in the negative but told Selby that his girlfriend lived at that address. Selby told Smith that he intended to get a search warrant, and he informed Smith of his Miranda rights. Selby stated that Smith was not free to go. No narcotics were found on Smith or in the truck.
Smith was handcuffed, placed in a police car, and taken back to 2745 St. Peter. Selby knocked on the door and was told by Melissa Lazard that she was locked inside the house and could not open the door. Smith was asked for the keys, and he told Selby that the key was underneath a garbage can on the right side of the house. The key could not be located, but another officer handed Selby the keys that had been taken from Smith when he was taken into custody. Selby opened the front door and entered the house. He testified that as he stood in the doorway, he could see into the second room of the house where he saw chunks of a white compressed substance on a nightstand. He stated that he then placed Ms. Lazard under arrest, advised her of her rights, and asked her if Smith lived in the house. Ms. Lazard responded that it was her house and that she paid the rent. Selby testified that he then presented her with a consent to search form, which she signed; but, he further testified that just prior to beginning to search, she began to waver about whether Smith was also on the lease and paid rent. Selby said that he decided to secure a search warrant instead. Pursuant to the warrant, crack cocaine, $2,200 in currency, and two guns were found in the residence. Smith was taken to the hospital to have his stomach pumped, and crack cocaine was found.

*645
ERRORS PATENT

The appeal of Melissa Lazard contains an error patent. The trial judge sentenced Melissa Lazard after granting her motion for appeal. Although a defendant may only appeal from a final judgment of conviction where a sentence |4has been imposed, this court has held that the appeal will not be dismissed when the sentence was imposed after the granting of a motion for appeal. State v. Bryant, 98-1115 (La.App. 4 th Cir. 8/4/99), 744 So.2d 108. There are no other errors patent.

ASSIGNMENT OF ERROR NO. 1

In their sole assignment of error, defendants complain that the trial court erred in denying their motion to suppress the evidence. They argue that the police lacked probable cause to stop and arrest Alfred Smith based on the tip from the untested confidential informant and Smith’s activities prior to the arrest. They further argue that the police lacked probable cause to enter the residence without valid consent or a search warrant in the absence of exigent circumstances. Additionally, they argue that the search warrant that was later obtained should not have been issued because the police had already unlawfully entered the residence.
The first issue that must be disposed of is whether Alfred Smith was arrested without probable cause. La.C.Cr.P. art. 201 provides that an arrest is the taking of one person into custody by another by actual restraint of the person. In determining whether a person has been seized under the Fourth Amendment, the court must determine whether or not a reasonable person would have believed he was free to leave. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In State v. Allen, 95-1754, p. 6 (La.9/5/96), 682 So.2d 713, 719, the Supreme Court stated:
This court has considered this issue and determined that “it is the circumstances indicating the intent to effect an extended restraint on the liberty of the accused, rather than the precise timing' of an officer’s statements: ‘You are under arrest,’ that are determinative of when an arrest is actually made.” State v. Giovanni, 375 So.2d 1360, 1363 (La.1979) (quoting State v. Sherer, 354 So.2d 1038, 1042 (La.1978)); see also State v. Davis, 558 So.2d 1379, 1382 (La.App.1990)[sic]; State v. Simms, 571 So.2d 145, 148 (La.1990). In both Giovanni and Simms, this court found an arrest based on the fact that the defendant was not free to leave.
Looking at all of the circumstances surrounding the detention of Smith at the intersection of Broad and Ursuline, it appears that he was not free to leave when the police cars surrounded his trunk. Sel-by stated that one police car was in front and one behind Smith’s vehicle in what Selby called a “boxed-in maneuver” in order to stop him from driving away. Selby also admitted that Smith was under arrest because he was not free to leave; therefore, Smith was under arrest at that point.
A warrantless arrest must be based upon probable cause, which exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. Probable cause is assessed on an objective standard that must withstand the detached, neutral scrutiny of a judge; and, in determining whether probable cause exists, the court must take into account the practical considerations of everyday life on which average police officers can be expected to act. Id. A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, as long as the basis for the informant’s knowledge and reliability are established when examined under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, *646 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Corroboration of details of the informant’s tip by independent police investigation is valuable in applying the totality of the circumstances analysis. Id.
| (¡In State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the police received an anonymous telephone call from a concerned citizen that a person known as Will, who drove a dark green Pontiac, was involved in the sale of drugs in the Magnolia Housing Project. The caller gave a description of Will and stated that his car would be parked in the 2800 block of Magnolia when he was not dropping off narcotics. After the police went to the 2800 block of Magnolia and saw the car, they set up surveillance and saw the car drive away. They followed the car until it parked in the 2500 block of Sixth Street, and they saw that the driver matched the description given by the caller. The officers approached the driver, who was the defendant, and asked him his name. After the defendant gave them his name, William Robertson, the officers informed him that he was under investigation for narcotics. A canine detection unit was called and arrived some ten to fifteen minutes later. The dog indicated that there were narcotics under the car, and one of the officers retrieved a bag filled with crack cocaine. The trial court denied the defendant’s motion to suppress the evidence, but the Supreme Court reversed. The court found that the officers did not have reasonable suspicion to conduct an investigatory stop of the defendant based upon the anonymous tip and the subsequent corroboration by the officers. The court noted that Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), stressed corroboration and predictiveness in assessing reasonable suspicion for a stop pursuant to an anonymous tip and that the officers who had stopped the defendant corroborated certain aspects of the tip. The court further found that the tip had no predictive information from which the officers could reasonably determine that the informant had inside information or a special familiarity with the defendant’s affairs.
|7In State v. Creecy, 98-1472 (La.App. 4 th Cir. 7/14/99), 742 So.2d 615, the police received a tip from an untested confidential informant that the defendant was selling retail quantities of marijuana from his apartment at 1233 Saratoga Street where the informant had bought marijuana for consumption within the past seventy-two hours. The informant gave a physical description of the defendant and a description of his vehicle and license plate number. Based on this information, surveillance was set up; and, the police officer conducting the surveillance saw a great deal of pedestrian traffic going into and out of the alleyway on the right side of 1233 Saratoga. This officer also saw a man walk past his surveillance location who gave a startled look and went across the street to the apartment. This man came out a minute later, and another man who fit the description of the defendant came out of the apartment and looked around in all directions. The officer believed that his surveillance location had been comprised, and he decided to return to his police vehicle. He then called other officers to meet him at another location where it was decided to detain the defendant in order to keep him from destroying any evidence. The officers went back to 1233 Saratoga where they saw the defendant standing in the alleyway, and the officers detained him. They informed him that he was under investigation for narcotics trafficking, advised him of his Miranda rights, and placed him in handcuffs. The officers frisked the defendant for weapons and felt the outline of a small package consistent with narcotics packaging. The officers retrieved the package which contained green vegetable matter believed to be marijuana and placed the defendant under arrest. The officers then obtained search warrant for the defendant’s apartment and found more marijuana, as well as weapons and ammunition.
*647 |RThe trial court denied the defendant’s motion to suppress the evidence, but this court reversed. The court first concluded that an arrest, rather than a mere investigatory stop, occurred because the defendant was clearly not free to leave. The court then concluded that there was no probable cause for the arrest because the tip from the untested confidential informant had not been sufficiently corroborated by the surveillance of the defendant’s apartment. The court stated that the only indication of illegal activity was the informant’s statement that he had purchased drugs at the defendant’s apartment within seventy-two hours of making the tip; and, the court noted that the informant was not known to be reliable and his information was not independently verified with a controlled purchase. The other information about the defendant’s physical description, his residence and his vehicle were all innocent facts that could have been obtained by a casual observer; and, the informant did not predict the defendant’s future behavior from which it could have been concluded, had the predictions come true, that the informant had knowledge of facts unknown to the general public. The court also stated that the surveillance did not reveal any additional facts and circumstances suggesting that the defendant was engaged in criminal activity. The court concluded that the police had only a bald allegation from an unknown and untested informant that the defendant had sold drugs to him and that to find probable cause on such a naked basis meant that any citizen would be subject to arrest on such a claim. The court further rejected the argument that the drugs would have been inevitably discovered.
In State v. Bryant, 98-1115 (La.App. 4th Cir. 8/4/99), 744 So.2d 108, a police officer received a tip from a documented and paid informant that a black male in his late twenties or early thirties was selling narcotics out of a dark green [ 901dsmobile in the 1200 block of South Robinson and that he sold every day beginning at 5:00 p.m. Surveillance was set up in the 1200 block at 5:00 p.m.; and, after about five minutes later, the officer saw the defendant drive up in a dark green Oldsmobile. The defendant exited the car and sat on the steps of an abandoned house; and, another man walked up and then sat on the steps with the defendant. A second man then walked up and conversed with the defendant, who got up, went over to his car, opened the door, and retrieved a black pouch. The defendant gave the second man something from the pouch in exchange for currency. The officer conducting the surveillance called other officers to arrest the defendant. The defendant denied owning the vehicle, but the arresting officers removed keys to the vehicle from his pocket and retrieved the black pouch from underneath the driver’s seat. The trial court denied the defendant’s motion to suppress the evidence, and this court affirmed that ruling. The court found that the informant’s tip was sufficiently corroborated by the surveillance.
The situation surrounding the war-rantless arrest of Alfred Smith is more similar to the situations in Robertson and Creecy than the situation in Bryant. The informant was untested; and, Selby arrested Smith without waiting to corroborate the predictive portion of the tip, namely that Smith was on his way to deliver narcotics to the 2300 block of Aubrey Street between 11:45 p.m. and midnight. All that Selby corroborated was the type of vehicle that Smith drove, his address, and that he would leave his house between 11:45 p.m. and midnight. Selby admitted that the informant did not tell him that he (the informant) had been inside Smith’s house. Smith’s putting an unidentified something in his mouth before getting into his truck is not in itself a particularly suspicious act that would lead a person of ordinary caution to believe that Smith was engaged in the sale of | innarcotics. Additionally, there was no probable cause when the officers who stopped Smith saw him put something in his mouth and chew it furiously because they did not see him do *648 so until they exited their police ears. Also, there was no testimony that the officers could actually tell what it was that Smith had put in his mouth. In State v. Bentley, 97-1552 (La.App. 4 th Cir. 10/21/98), 728 So.2d 405, this court stated that once the arrested officer noticed the white substance in the defendant’s mouth, he had probable cause to arrest the defendant. Hence, there was no probable cause to arrest Smith either when the police executed the “boxed-in maneuver” to keep him from driving away or when they saw him put an unidentified substance in his mouth subsequent to the stop. Because the arrest of Smith was illegal, the evidence taken from his person and from the residence was unlawfully seized and should have been suppressed as the fruits of the unlawful arrest. See State v. Creecy, at p. 10-11, 742 So.2d at 621. The trial court’s ruling is reversed, and the case remanded.
Accordingly, the trial court’s denial of the motion to suppress the evidence is reversed, and the matter remanded to the trial court.
REVERSED AND REMANDED.