| Judge MICHAEL E. KIRBY.

STATEMENT OF THE CASE

On June 17, 1999 the defendant-appellant, James Thompson, was indicted by a grand jury on two counts of possession of heroin with the intent to distribute, violations of La. R.S. 40:966(A). Also indicted on the second count was his wife, Terry Thompson. The defendant entered a not guilty plea at his arraignment on June 22, 1999. Following a motion hearing on July 1, 1999 the trial court denied the motion to suppress evidence as to count two. Testi *152 mony as to the motion to suppress on count one was heard on July 14, 1999 after which the court denied the motion to suppress the evidence and the statement.
On July 26, 1999, the defendants waived a jury trial and proceeded with a bench trial. The court found Terry Thompson not guilty and found the defendant guilty of simple possession of heroin as to each count. The defendant immediately waived sentencing delays. The court initially sentenced him to ten years without the benefit of probation and suspension of sentence on each count to run consecutively. The State then filed a multiple bill of information charging the defendant as a second offender. He entered a guilty plea to the multiple bill. The court vacated the previously imposed sentence as to count one only and | ¿resentenced the defendant to serve twenty years at hard labor to run concurrently with the sentence imposed on count two. The defendant was informed of his appeal rights.

STATEMENT OF THE FACTS

On March 26, 1999, Sergeant Eddie Sel-by and other New Orleans police officers, based on information received from an untested source, established a surveillance of 2475 N. Claiborne Avenue. The officers had information about the residence and a vehicle parked in front. As they watched, the defendant came out of the residence, went to the passenger’s side door of the vehicle, and placed something in the vehicle on the floorboard. The defendant went back to the residence and came back outside a short time later with an infant whom he placed into the rear seat of the targeted vehicle. The officers saw an unknown black male walk up to the defendant and engage him in conversation. The officers saw an exchange of money. The defendant went back to the passenger’s side of the vehicle and removed something from the floor area. The defendant gave the unknown object to the black male, who then left the scene. The police officers conducting the surveillance watched the defendant drive to the 1400 block of Music Street where he met with another unidentified black male. The two men walked to the car and looked into the rear passenger’s seat, where the infant was seated.
During the surveillance, Sergeant Selby had instructed back-up officers to stop the first man who met with the defendant. However, that team radioed to him that they had been unsuccessful as the man had eluded and escaped from them. Because he was concerned that the defendant or someone at his residence would be |Ralerted, the sergeant decided to stop the defendant. As the police approached the defendant, they observed him throw something into his car. The officers exited their car and identified themselves as police officers. Sergeant Selby looked inside the defendant’s vehicle and saw a white napkin. He examined the napkin and discovered that it contained fourteen tin foil packets which contained a powdery substance consistent with heroin.
The defendant was taken into custody, as was the infant, and taken to the residence at 2475 N. Claiborne. The defendant indicated that there was heroin inside the house. The defendant’s mother-in-law gave consent for a search of the house; the consent form was also signed by the defendant’s wife Terry Thompson. The defendant showed the officers various areas in his bedroom where heroin and material for packaging heroin could be found. The defendant was taken to the Fifth District police station where he gave a full statement about selling drugs. The defendant indicated that his mother-in-law and his wife knew nothing about the drug sales.
The parties stipulated that the substance found in the foil packets seized from *153 the defendant’s car tested positive for heroin:
On April 23, 2001 Agent Mike Herman of the St. Bernard’s Sheriffs Office participated in the arrest of the defendant and his wife, Terry Thompson. On that date a confidential informant engaged in a deal with the defendant. When the C.I. signaled that the deal was done, the police approached the defendant’s car and ordered him out. There was shuffling between the defendant and his wife, and then Agent Herman saw the defendant throw an object into his mouth. The police physically restrained the defendant after a scuffle. The defendant then spit out hseveral tin foil wrappers containing heroin. No heroin was found in the possession of the defendant’s wife.
The parties stipulated that currency was seized from the defendant and not his wife. Also, there was a stipulation that the tin foil wrappers which the defendant spit out contained heroin.
At the trial, the defendant’s wife and codefendant, Terry Thompson, testified. She stated that on April 23rd the defendant had picked her up from Southern University where she was enrolled as a student. On their way home the defendant stopped at a grocery store. Before she knew what was happening, a man walked up to the vehicle, and then the police came from everywhere. Mrs. Thompson admitted that she knew about the defendant’s arrest on March 26th (count one of the indictment), but denied any knowledge of heroin in the house or car.
The defendant did not testify at trial.

ERRORS PATENT/ASSIGNMENT OF ERROR NUMBER 1

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 2

The appellant argues that the trial court erred in its rulings on the motions to suppress. He argues each count separately; each count was handled in a separate hearing.
| MOTION TO SUPPRESS EVIDENCE — COUNT 1
The appellant argues that Sergeant Sel-by lacked a sufficient basis to stop him as the informant who provided the initial tip regarding the defendant and the residence on N. Claiborne was not shown to be reliable nor was the tip sufficiently corroborated. The appellant further argues that the sergeant lacked probable cause to conduct a warrantless search of the defendant’s vehicle. Finally, the appellant contends that his inculpatory statement and the subsequent seizure of evidence from the house were the fruit of the arrest which was tainted by the illegal stop and search of the vehicle.
The motion to suppress hearing as to count one of the indictment was held on July 14, 1999. Sergeant Selby testified that an untested informant stated that a person he knew as “James” who resided at 2475 N. Claiborne Avenue was distributing large quantities of heroin. The C.I. also described James’s vehicle, a brown Delta 88, and the license number of the vehicle. The sergeant stated that the license plate came back as registered to James Thompson with an address in New Orleans East.
Sergeant Selby then recounted, as he later did at trial, that he set up a surveillance of the residence and the targeted vehicle which was parked out front. He saw the defendant come out of the house, remove a white object from his shirt pocket, and place it on the floorboard in the front of the car. The defendant then went inside and returned with the infant whom he placed in a car seat in the rear passenger side of the car. As the defendant was *154 about to get in the car, a black male approached and engaged him in a conversation. The defendant accepted some money, went into the car from the driver’s side and reached toward the floorboard; the defendant then returned to the other man and gave him an object.
1 ^Sergeant Selby further testified that the surveillance officers followed the defendant to Music Street where they observed him and another man admiring the baby in the back seat. The officers chose to stop the defendant at that time because they were afraid the investigation had been compromised; the takedown team had attempted to stop the man who gave the defendant currency, but he had run away from them after placing something in his mouth. As they approached the defendant, he tossed something in the vehicle. The sergeant looked into the passenger’s side door and saw a white tissue paper on the floorboard. He “recovered it and discovered that it contained” foil packets.
The defendant was arrested and given his constitutional rights. The defendant was informed that the officers intended to return to the Claiborne Avenue residence and obtain a warrant to search it. Apparently during this time, the defendant admitted that the residence was his mother-in-law’s house, and that the address in New Orleans East was where he resided. When the officers returned to the Claiborne Avenue residence, the defendant’s mother-in-law was told that the defendant had admitted that there were narcotics in the residence, and that she could either consent to a search or they would obtain a warrant. The defendant’s mother-in-law executed the consent to search which was witnessed by the defendant’s wife.
At the motion hearing, there was no cross-examination of Sergeant Selby.
The first aspect of the appellant’s argument is whether the tip from the informant could be the basis for a stop. In State v. Fisher, 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184, the Supreme Court discussed the factors to evaluate when the police rely on a tip from a confidential informant:
|7While probable cause must be determined on the totality of the circumstances, an informant’s reliability, veracity and basis of knowledge are “all highly relevant.” Illinois v. Gates, 462 U.S. 213[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983); State v. Ruffin, 448 So.2d 1274, 1278 (La.1984). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant’s knowledge and the informant’s reliability, when examined under the totality of the circumstances, are established.
Using the standard stated in Fisher, in State v. Smith, 99-2129 (La.App. 4 Cir. 4/26/00), 761 So.2d 642, this Court found that the police lacked probable cause to effect an arrest under facts similar to the instant case. In Smith, the officers received a tip from an untested informant that the defendant, who lived at a certain address, would deliver drugs from that address to a certain location every night between 11:45 p.m. and midnight, using a certain truck. The officers were already familiar with the defendant due to other tips, and the delivery address was well-known for drug activity. The officers set up a surveillance of the given address and saw the described truck sitting outside the residence. At approximately 11:40 p.m., they saw the defendant walk out of the residence, walk to the truck, put an unknown object in his mouth, enter the truck, and drive from the residence. The officers followed the defendant for six blocks and then stopped him, using a “boxed-in” maneuver wherein he could not *155 move his truck. As the defendant exited his truck, the officers saw him put another unknown object in his mouth and chew vigorously. The defendant refused to open his mouth at the officers’ order, and he denied living at the residence he had just left, indicating his girlfriend lived at that address. The officers searched him and his truck but found no contraband. The officers took him back to the residence, and using keys they obtained from his pocket, opened the door to the residence. Inside the residence, |sthey found drugs. On appeal, this Court reversed the defendant’s conviction, finding the officers’ actions at the stop constituted an arrest, and there was no probable cause for the arrest. The Court noted the tip was from an untested informant, and the officers’ observations did not corroborate the untested informant’s tip that the defendant was delivering drugs. This Court also noted that the fact that the defendant placed unknown objects in his mouth was not in itself a particularly suspicious action which would lead them to believe he was engaged in criminal activity.
The Court in Smith reviewed cases with similar factual scenarios:
In State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, the police received a tip from a known, but untested informant. The informant provided nothing to indicate how he allegedly knew that the defendant, whom the informant knew as “Head,” was dealing crack and powdered cocaine on St. Louis Street between Bourbon and Burgundy Streets. The informant did give a detailed description of “Head” as an individual wearing a white T-shirt and blue jeans, with a brace on his left leg. The informant also stated that defendant concealed the drugs near the brace on his left leg, and that defendant limped as he walked. Within fifteen minutes of receiving this tip, officers observed an individual matching the description given by the informant walking in the 800 block of St. Louis Street. The officers exited their vehicle and informed the defendant that he was under investigation for possible narcotics violations. One of the officers performed a frisk of the defendant and felt several rock-like objects, along his left leg, which he stated he recognized to be narcotics from prior experience. The officer retrieved crack cocaine and a small bag containing powdered cocaine from the defendant’s left leg near his brace. On appeal, this Court concluded that the 19trial court erred when it denied the motion to suppress evidence because, although the informant was described as “registered,” there was no evidence provided by the State to indicate that the informant had worked with any officer in the past, that he had provided information in the past which led to any arrests or convictions, or that the information given by this informant at this time was corroborated by any independent police observation, aside from confirming the description of the targeted individual.
In State v. Carey, 609 So.2d 897 (La. App. 4 Cir.1992), this Court reversed the defendant’s conviction for possession of a firearm by a convicted felon after finding that police lacked reasonable suspicion to justify the investigatory stop leading to the discovery of the gun. Police received a tip from a reliable confidential informant that in approximately one hour, a short black male named Leroy, driving either a 1981-82 green Mercury Cougar or a Mercury of some type, which was in good shape, would be delivering crack cocaine in the 2300 block of Lafitte Street, in the Lafitte Housing Project. Approximately forty-five minutes later, officers maintaining a surveillance observed a green Mercury Cougar with a brown top leaving the 2300 block of Lafitte Street. A black male, the defendant, was driving, with a black male *156 and a black female as passengers. Defendant stopped at a nearby used car lot and talked with someone for about five minutes. Officers later lost sight of the car, but saw the defendant briefly exit. After following the car for about one-half hour, police stopped the car and found a 9mm handgun underneath the seat. In finding that the information possessed by police did not give rise to reasonable suspicion necessary for an investigatory stop, this Court stated:
| mlnformation from the confidential informant was not based on personal knowledge as to the defendant’s alleged role in a cocaine delivery. The officers followed the defendant for a period of time and did not observe suspicious activity. These circumstances are distinguishable from cases which involve an on-the-scene tip by an informant who points out the car containing drugs and no mistake was possible.
609 So.2d at 900.
In its brief the State concedes “arguably” that the tip from the informant “may not be sufficient to give officers reasonable suspicion to stop the defendant, as Officer Selby explained the informant was ‘untested.’ ” The State argues, however, that the tip was corroborated sufficiently to allow a stop of the defendant.
As the cases discussed above show, lack of corroboration of the informant’s tip clearly would invalidate any stop of the defendant in this case. There was some corroboration here in that Sergeant Selby saw the defendant exchange an object for money, and the described vehicle was registered to a person named James (although the address did not match). Notably, however, the tip indicated that the defendant was selling large quantities of heroin from the residence. Nothing in the testimony at the motion hearing or trial indicated that the officers saw any traffic in or out of the residence which was consistent with narcotics sales, and thus this part of the tip was not corroborated. Nothing in the tip indicated that the defendant routinely transported narcotics away from the residence to other locations. Thus, although he was observed in what Sergeant Selby considered a possible drug sale, such a transaction was not done in a fashion consistent with any information provided by the untested informant. There was no prediction of future behavior from the informant. Therefore, under the totality of the circumstances, we conclude the police did not have reasonable suspicion to stop the defendant, and Inthey did not have probable cause for an arrest or search of the defendant or his vehicle.
Notably, the State in its brief argues that the retrieval of the white napkin from the defendant’s car was permissible because it was in plain view, not because the police had probable cause to search the vehicle. As discussed in State v. Smith, 96-2161 p. 3 (La.App. 4 Cir. 6/3/98), 715 So.2d 547, 549:
In order for an object to be lawfully seized pursuant to the “plain view” exception to the Fourth Amendment, “(1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband.” State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied 629 So.2d 1126 and 1140 (La.1993). In Tate, this court further noted: “In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found “inadvertently” in order to fall within this exception to the warrant re *157 quirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently.” Tate at 917.
With regard to Sergeant Selby’s observation of the object inside the defendant’s car, he testified at the motion hearing that he “looked into the passenger’s side door of the vehicle and discovered a white tissue paper that was laying [sic] on the floorboard of the vehicle. I recovered it and discovered that it contained 14 packets of tin foil.” Nowhere in the transcript of this hearing, or in the trial transcript, was there any testimony by Sergeant Selby that he immediately recognized “white tissue paper” as narcotics or as typical packaging of narcotics. Instead, it is clear that the sergeant retrieved the object and opened it before he could observe any typical packaging for narcotics, i.e., tin foil packets.
J^See, State v. James, 99-3304 (La.12/08/00) 795 So.2d 1146 where the Louisiana Supreme Court held that it was impermissible for an officer possessing reasonable suspicion to conduct a Terry stop to remove a film canister from a suspects pocket, shake it to determine its contents and finally open it to visually discover its contents of crack cocaine because film canisters “are not so peculiarly associated with drug trafficking that the plain feel or view of these outer surfaces is the functional equivalent of the plan view or feel of their contents.... ” Similarly, we must conclude that even if Sergeant Selby had reasonable suspicion to conduct a valid Terry stop, we cannot say that the white tissue paper is so peculiarly associated with the drug trade that its plain view equates to an association with contraband. A fortiori, in a case where there is no reasonable suspicion for a valid Terry stop, there can be no association of the tissue paper with illegal drugs.
This assignment has merit and we are compelled to reverse the trial court’s ruling denying the defendant’s motion to suppress. Likewise, the defendant’s conviction and sentence on this count must be reversed since it is based on the improperly admitted evidence derived from the illegal search.
MOTION TO SUPPRESS — COUNT 2
The second count arose from the defendant’s arrest on April 23, 1999. At the motion hearing held on July 1, 1999, Detective William Marks testified that, on that day, he had been contacted by Lieutenant Eddie Sensebe of the St. Bernard Sheriffs narcotics unit. Detective Marks was informed that the narcotics unit had set up a controlled purchase with a proven reliable informant and “an unknown target” which deal was supposed to occur in St. Bernard Parish but had been changed to Delery Street, inside the New Orleans city limits. Detective Marks met |13with Detective Herman, who worked for Lt. Sensebe, and was informed that the deal had been set up for 12:30 p.m. at Delery and St. Claude. The plan was an exchange of $160.00 for eight dosage units of heroin. The detectives proceeded to the area; the informant was placed on the scene; and a surveillance was begun. At approximately 1:00 o’clock, a burgundy Delta 88 arrived; it was being driven by the defendant James Thompson. The defendant’s wife and infant were also in the car. According to Detective Marks, the confidential informant “gave [a] predetermined signal that the bad guy was on the scene, at which time the informant approached the front window.” The C.I. and the defendant engaged in a conversation, and then the informant got into the car. The police had not prepared for the possibility that the informant would enter the target’s vehicle and did not feel that they could guarantee his safety. Therefore, the *158 police moved in at which time the defendant attempted to flee in his vehicle. The St. Bernard units were able to “box him in”. The officers saw the defendant and his wife exchanging something; the defendant was seen placing an object in his mouth; the defendant then attempted to flee on foot. The defendant was physically tackled and resisted the officers at which time they used pepper-spray on him. The defendant spit out the bag in his mouth; it contained the eight pieces of tin foil with heroin inside.
Detective Marks also testified that, before he was contacted by the St. Bernard Sheriffs personnel, those officers had taped a phone call between the informant and the defendant in which the informant set up the drug buy.
The appellant argues that the testimony of Detective Marks establishes that the defendant was actually arrested when the St. Bernard Sheriffs vehicles blocked his car, citing State v. Smith, 99-2129 (La. App. 4 Cir. 4/26/00), 761 So.2d 642. In that case (which is also discussed in connection with count one), this Court stated:
The first issue that must be disposed of is whether Alfred Smith was arrested without probable cause. La.C.Cr.P. art. 201 provides that an arrest is the taking of one person into custody by another by actual restraint of the person. In determining whether a person has been seized under the Fourth Amendment, the court must determine whether or not a reasonable person would have believed he was free to leave. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In State v. Allen, 95-1754, p. 6 (La.9/5/96), 682 So.2d 713, 719, the Supreme Court stated:
This court has considered this issue and determined that “it is the circumstances indicating the intent to effect an extended restraint on the liberty of the accused, rather than the precise timing of an officer’s statements: ‘You are under arrest,’ that are determinative of when an arrest is actually made.” State v. Giovanni, 375 So.2d 1360, 1363 (La. 1979) (quoting State v. Sherer, 354 So.2d 1038, 1042 (La.1978)); see also State v. Davis, 558 So.2d 1379, 1382 (La.App. 1990)[sic]; State v. Simms, 571 So.2d 145, 148 (La.1990). In both Giovanni and Simms, this court found an arrest based on the fact that the defendant was not free to leave.
Looking at all of the circumstances surrounding the detention of Smith at the intersection of Broad and Ursuline, it appears that he was not free to leave when the police cars surrounded his trunk. Selby stated that one police car was in front and one behind Smith’s vehicle in what Selby called a “boxed-in maneuver” in order to stop him from driving away. Selby also admitted that Smith was under arrest because he was not free to leave; therefore, Smith was under arrest at that point.
A warrantless arrest must be based upon probable cause, which exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. Probable cause is assessed on an objective standard that must withstand the detached, neutral |1Bscrutiny of a judge; and, in determining whether probable cause exists, the court must take into account the practical considerations of everyday life on which average police officers can be expected to act. Id. A confidential informant may provide adequate information *159 to establish probable cause for a war-rantless arrest, as long as the basis for the informant’s knowledge and reliability are established when examined under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Corroboration of details of the informant’s tip by independent police investigation is valuable in applying the totality of the circumstances analysis. Id.
Smith, pp. 4-5, 761 So.2d at 644-46.
Here, the testimony of Detective Marks was clear; the St. Bernard units “boxed in” the defendant’s car when he tried to drive away. Thus, it appears he was arrested at that point. However, in contrast to the incident in March, we find the officers had probable cause for that arrest. A confidential informant had set up a large purchase of heroin with the defendant. The call making the arrangements was taped. The defendant appeared only thirty minutes late for the sale, and the informant gave the pre-arranged signal that the seller had arrived. The defendant was observed in conversation with the informant. Although the sale had not yet been consummated, in light of the taped phone call, it appears that the police had probable cause to believe that the defendant was in possession of heroin and was committing the crime of attempted distribution. Thus his arrest was legal and the ultimate seizure of the heroin was also valid.
The assignment of error as to count two has no merit.

ASSIGNMENT OF ERROR NUMBER 3 &4

In his third assignment of error, the appellant contends that his sentences are excessive as he received the maximum on each one. In light of our reversal of his 116conviction and sentence in count 1, we will limit our review to the sentence imposed on count 2.
Defendant also concedes that his counsel made no objection nor did he file a motion to reconsider sentence pursuant to La. C.Cr.P. art. 881. Thus, as he acknowledges, any error as to sentencing was not preserved for review. See State v. Robinson, 98-1606 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 125; State v. Martin, 97-0319, p. 1 (La.App. 4 Cir. 10/1/97), 700 So.2d 1322, 1323; State v. Green, 93-1432, pp. 5-6 (La.App. 4 Cir. 4/17/96), 673 So.2d 262, 265; State v. Salone, 93-1635, p. 4 (La. App. 4 Cir. 12/28/94), 648 So.2d 494, 495-96. However, he then argues in his fourth and final assignment of error that his counsel was ineffective because he failed to object to the sentence and file the necessary motion under art. 881.1.
In State v. Rodriguez, 00-0519 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 647-649, this Court considered a similar argument and set out the following standard:
“As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted.” State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). However, where the record is sufficient, the claims may be addressed on appeal. State v. Wessinger, 98-1234, p. 43 (La.5/28/99), 736 So.2d 162, 195, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999); State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Rob *160 inson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order |17to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064; State v. Ash, 97-2061, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland at 694, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La. App. 4 Cir. 5/19/99), 737 So.2d 231, 236, writ denied, 99-1982 (La.1/7/00), 752 So.2d 175.
Thus, to prevail on this claim defendant must show that there is a reasonable probability that, had defense counsel filed a motion to reconsider sentence and preserved the issue of excessiveness of sentence, this court would have found merit in the assignment of error.
La. Const. art. I, section 20 prohibits excessive sentences. State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. “ ‘Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment.’ ” State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La. App. 4 Cir. 3/16/99) (quoting State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741). However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676. “‘A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.’ ” Baxley, 94-2982 at p. 9, 656 So.2d at 979 (quoting State v. Lobato, 603 So.2d 739, 751 (La.1992)); State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La. App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La. App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the eircum- *161 stances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185, writ denied, 99-2632 (La.3/17/00), 756 So.2d 324.
However, in State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resen-tencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might liflhave been more appropriate.’” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentenc-ing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State v. Wimberly, 414 So.2d 666, 672 (La. 1982).

Id.

In the instant case, the trial court, at the time it found the defendant guilty of the responsive verdicts of guilty of simple possession of heroin, noted that the defense counsel in his closing had argued the penalty ramifications of a finding of guilty as charged and that there was a great disparity between the penalties for possession of heroin with the intent to distribute and possession of cocaine with the intent to distribute. Defense counsel had made a plea to the court to show leniency in its verdict, noting that even with the defendant’s record, if the charge involved cocaine the sentencing range would be fifteen to sixty years, instead of life which is the penalty for the crimes for which the defendant was being tried. Counsel suggested that a responsive verdict of attempt would be appropriate. For attempt, the defendant could have received a sentence of fifty years as a first offender under La. R.S. 40:966(B) and La. R.S. 14:27. Surprisingly, the court then actually did the defendant a bigger favor than that requested by counsel; it found the defendant guilty of only simple possession of heroin, for which the sentencing | grange (at the time of the defendant’s offenses) was a minimum of four years to a maximum of *162 ten years without benefit of probation or suspension of sentence. La. R.S. 40:966(C)(1).[1]
When the court found the defendant guilty of simple possession of heroin, it noted as a mitigating factor that the defendant, when arrested, had been cooperative and forthcoming about his activities. Thus, although not technically stated as a factor in sentencing, the court essentially did reduce the defendant’s potential sentence from life imprisonment by use of a responsive verdict. Not surprisingly, after seeing his client receive this windfall, defense counsel waived all sentencing delays and suggested his client plead guilty to the multiple bill charging him as a second offender. The district attorney informed the court that the defendant had a significant history of felony arrests, twenty-three in all. The defendant’s prior conviction was a 1994 guilty plea to possession of cocaine.
The appellant’s only argument regarding his sentences is that he was not the most egregious offender, and thus receiving the maximum sentences of ten years on one count was excessive. However, the record makes it clear that the defendant received the maximum sentence because the court found him guilty of the lesser offenses to avoid giving him the mandatory sentences of life imprisonment. Furthermore, the record is also clear that the defendant committed the greater offense for which he was tried. The second incident occurred while he was out on bond for the first offense. The amount of heroin in the second incident, eight units, 121 was not insignificant. During the crime the defendant had heroin in his car at the same time his infant daughter was present, thus placing the child at risk, especially when he invited the potential buyer to get in the car with him and his wife and child.
We do not find the sentence imposed on the defendant is excessive. The defense counsel was not ineffective by not objecting to the sentences or filing a motion to reconsider. The appellant’s third and fourth assignments of error are without merit.

CONCLUSION

The appellant’s conviction and sentence as to count one are reversed and the case is remanded for further proceedings not inconsistent with this opinion. His conviction and sentence on count two are affirmed.
CONVICTION AND SENTENCE AS TO COUNT ONE REVERSED AND REMANDED. CONVICTION AND SENTENCE AS TO COUNT TWO AFFIRMED.

. The defendant was sentenced to ten years on each count to run consecutively. When the sentence on the first count was vacated and the defendant resentenced as a second offender, he was given twenty years, the maximum; however the court then ordered that the sentences run concurrently. Thus, the court maintained a sentencing scheme of twenty years total. Because the counts were separate incidents, it is presumed that the sentences should be consecutive unless the court orders otherwise. La.C.Cr.P. art. 883. Therefore, the defendant did not actually receive the maximum number of years of incarceration, a total of thirty, which he could have. Furthermore, the defendant could have been adjudicated a multiple offender on both counts, raising his potential sentence to a total of forty years.