hWALTZER, J.
Defendant, Paul Broussard, appeals his conviction and sentence for attempted possession of cocaine.

STATEMENT OF THE CASE

On 8 June 1994, the appellant Paul Broussard was charged with one count of possession of 28 to 200 grams of cocaine.[1] *1258 At his arraignment on 16 June 1994 he pled not guilty. The court heard and denied his motion to suppress the evidence on 19 July 1994. Broussard’s writ application was denied, since he had an adequate remedy on appeal if ultimately convicted. On 14 March 1995, Broussard waived his right to a jury and was tried by the judge. At the conclusion of the trial, the court found him guilty of attempted possession of 28 to 200 grams of cocaine. On 27 March 1995, the court found him to be a second offender, and on 11 April 1995 it sentenced him to serve seven and a half years at hard labor without benefit of parole, probation, or suspension of sentence. The court also imposed and suspended a fine of $25,000. Broussard filed motions to correct an illegal sentence, which the trial court denied. Our court, in an unpublished disposition, ^amended Broussard’s sentence to delete the portion denying parole eligibility beyond the first five years.
On 17 December 1996, the trial court denied Broussard’s motion for out-of-time appeal. However, on 19 June 1998, the court granted a motion to amend sentence and amended the sentence to seven years at hard labor as a second offender, the first five years without benefit of parole. On that same date, the court granted Broussard an out-of-time appeal.

FACTS

On 7 May 1994, narcotics officers were conducting an undercover operation on N. Villere Street. Det. Carkum posed as a potential buyer, while Sgt. Bardy monitored the buy from a nearby location via an audio transmission. Both officers were driving unmarked vehicles, but Bardy testified his car was a type easily identified as a police car. Off. Gay was among a few other officers who were working backup. Det. Carkum drove onto N. Villere, and near the corner of St. Ann and Villere he was flagged down by a man later identified as Freddie Allen. Allen told Det. Carkum to exit his car. Det. Carkum complied, and he and Allen talked briefly in front of a grocery store. Allen walked to a woman, later identified as Betty Hills, who was standing on a nearby porch. Allen obtained a rock of cocaine from Hills, walked back to Det. Carkum, and gave it to him in exchange for a marked $20 bill. As Det. Carkum began leaving, he noticed Allen walk to a Jeep parked nearby. Allen entered the Jeep and spoke with the defendant Paul Broussard. Allen and Brous-sard spoke briefly, and then Allen left the Jeep, and Broussard began driving from the scene.
At that point, the officers decided to detain Allen, Hills, and Broussard. Sgt. Bardy testified he approached Broussard’s Jeep and turned his vehicle across the Jeep’s path, cutting it off. He testified Broussard | 3began backing up, and at that point Off. Gay pulled his car behind Brous-sard’s Jeep. The officers ordered Brous-sard out of the Jeep. However, Broussard could not easily exit because of injuries he had received in an earlier shooting. Sgt. Bardy and Off. Gay helped Broussard from the Jeep, and Bardy frisked Brous-sard for weapons. As Sgt. Bardy’s hand passed over Broussard’s pants pocket, Bardy felt a bulge of lumps which crackled and which he believed to be a bag of crack cocaine. Sgt. Bardy reached into Brous-sard’s pocket and retrieved twelve bags of crack cocaine totaling approximately sixty grams of cocaine.
Other officers arrested Hills and Allen. Officers seized a matchbox from Hills containing seven pieces of crack cocaine. Other officers seized the marked $20 bill from Mien. The substances seized from Hills and Broussard, as well as the rock Allen sold to Det. Carkum, all tested positive for cocaine.
Sgt. Bardy testified that he did not see Broussard actually engage in any criminal *1259 activity prior to stopping him, but he feared Allen may have passed the marked $20 bill to Broussard when Allen briefly entered the Jeep. He testified, however, that he only monitored the buy between Det. Carkum and Allen through the audio transmission. He admitted that when he gave the order to stop all the parties, he was under the impression Allen was still in the Jeep. When he stopped the Jeep, Allen had already exited it. Sgt. Bardy testified that Det. Carkum indicated in his audio transmission that he believed Broussard may have been another potential buyer when Allen entered the Jeep.
Off. Gay, who actually observed the undercover buy, testified he saw Allen enter the Jeep and speak briefly with Broussard before exiting it. He testified he believed Allen may have given Broussard the marked money or |4may have been involved in another drug sale. However, he admitted he did not see Allen give Brous-sard the money, and he further admitted he did not see Allen go to Hills after visiting Broussard. He testified that he parked his vehicle behind Broussard’s Jeep after Sgt. Bardy stopped Broussard’s Jeep with his vehicle.
Det. Carkum testified as to the drug sale between him and Allen. He testified he did not know why Allen might have entered Broussard’s Jeep because he walked back to his vehicle and drove off right after completing the transaction.
Freddie Allen testified Broussard is married to his niece. Allen admitted selling the cocaine to Det. Carkum, and he testified he obtained the cocaine from another niece, Betty Hills. He denied that Broussard was involved in the cocaine sale. He testified Broussard had just pulled up at the time of the sale, and he entered the Jeep merely to briefly greet Broussard. He testified that the marked $20 bill was seized from him.
Betty Broussard testified she is Brous-sard’s wife and Allen’s niece. She testified that her husband used cocaine prior to his arrest. She admitted she was not at the scene at the time of his arrest.

DISCUSSION AND RECOMMENDATION

A. Errors Patent

A review of the record for errors patent reveals none.[2]

B. Assignment of Error

By his sole assignment of error, the appellant contends the trial court erred by denying his motion to suppress the evidence. He contends the | ^officers had neither reasonable suspicion to stop him nor a reasonable belief that he was armed which would have allowed them to frisk him.
The initial inquiry, however, is whether the officers detained or arrested the appellant when they stopped him. If the officers’ actions were a mere detention, they would have only needed reasonable suspicion of criminal activity to stop him. State v. Allen, 95-1754 (La.9/5/96); 682 So.2d 713; State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99); 729 So.2d 743, writ den. 99-0914 (La.5/14/99); 743 So.2d 651; State v. Sneed, 95-2326 (La.App. 4 Cir. 9/11/96); 680 So.2d 1237, writ den. 96-2450 (La.3/7/97); 689 So.2d 1371. However, if the officers’ actions constituted an arrest, the officers had to have probable cause to believe the appellant himself was engaged in, or was about to become engaged in, criminal activity. State v. Wilson, 467 So.2d 503, 515 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Blue, 97-2699 (La.App. 4 Cir. 1/7/98); 705 So.2d 1242, writ den. 98-0340 (La.3/27/98); 716 So.2d 887; State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95); 660 So.2d 942, writ den. 95-2331 (La.2/2/96); 666 So.2d 1092, *1260 and State v. Dibartolo, 95-3044 (La.2/2/96); 666 So.2d 1105.
In State v. Smith, 99-2129 (La.App. 4 Cir. 4/26/00); 761 So.2d 642, officers followed the defendant for six blocks and then stopped him, using a “box-in maneuver”, wherein one officer pulled his vehicle in front of the defendant’s truck while another officer blocked the back of the defendant’s truck. On review, this court found that this type of detention was an arrest. This court stated:
LSA-C.Cr.P. art. 201 provides that an arrest is the taking of one person into custody by another by actual restraint of the person. In determining whether a person has been seized under the Fourth Amendment, the court must determine whether or |finot a reasonable person would have believed he was free to leave. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In State v. Allen, 95-1754, p. 6 (La.9/5/96); 682 So.2d 713, 719, the Supreme Court stated:
This court has considered this issue and determined that “it is the circumstances indicating the intent to effect an extended restraint on the liberty of the accused, rather than the precise timing of an officer’s statements: ‘You are under arrest,’ that are determinative of when an arrest is actually made.” State v. Giovanni, 375 So.2d 1360, 1363 (La.1979) (quoting State v. Sherer, 354 So.2d 1038, 1042 (La.1978)); see also State v. Davis, 558 So.2d 1379, 1382 (La.App.1990)[sic]; State v. Simms, 571 So.2d 145, 148 (La.1990). In both Giovanni and Simms, this court found an arrest based on the fact that the defendant was not free to leave.
Smith, supra at 645. This court found that the position of the officers’ vehicles was such that the defendant was not free to leave, and thus the detention was an arrest. In addition, one of the officers admitted the defendant was under arrest when the officers stopped him.
In State v. Bruser, 95-0907 (La.App. 4 Cir. 9/15/95); 661 So.2d 152, the officers activated their lights in order to stop the defendant. After he exited his car, the officers advised him he was under investigation for narcotics violations and advised him of his Miranda rights. This court found there was no arrest because the officers did not order him from his car or physically restrain him.
In State v. Wade, 390 So.2d 1309 (La.1980), cert. den. Wade v. Louisiana, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981), police officers “raced their vehicle until they pulled along side” the fleeing suspect, then stopped their vehicle and jumped out, blocking the suspect’s path. The Louisiana Supreme |7Court concluded that this was an investigatory stop, even though some degree of force was used to accomplish this stop.
In State v. Solomon, 93-1199 (La.App. 3 Cir. 3/2/94); 634 So.2d 1330, the suspect fled as the police officers approached on foot. The officers gave chase, caught him, and informed him that “they merely wanted to speak with him.” When the defendant began struggling, the deputies handcuffed him. The Louisiana Third Circuit, citing recent cases focusing on the intent of the officers to determine whether a stop is actually an arrest, held that the officers’ intent was to question the defendant, not to formally arrest him. The court found that the defendant was handcuffed only because of his violent struggle with the deputies, and that the stop was brief and reasonable to investigate possible criminal activity.
In State v. Francise, 597 So.2d 28 (La.App. 1 Cir.1992), writ den. 604 So.2d 970 (La.1992), police officers activated the lights and siren on the police vehicle, while immediately behind the suspect’s vehicle. The suspect defied the officers’ act by accelerating rather than stopping. The officers successfully stopped the defendant’s vehicle, drew their weapons, ordered the defendant and another passen *1261 ger from the vehicle, and had them place their hands on the vehicle. The Louisiana First Circuit held that the officers’ actions constituted an arrest. Likewise in State v. Raheem, 464 So.2d 293 (La.1985), the Supreme Court found that “when the officers stopped the Cadillac, drew their weapons, ordered the defendants out of the car, and had them place their hands on the vehicle, an arrest occurred.” In State v. Kinnemann, 337 So.2d 441 (La.1976), the Court found that defendants were arrested where police officers stopped their vehicle using blue lights and a siren, removed the defendant from the vehicle, and | sphysically restrained the defendants before contraband was found in the vehicle.
The case closest to the situation before this Court is that of Smith, with the only exception being that the officers did not admit they had intended to arrest-him at the time they stopped him. However, it appears that the lack of this affirmative statement from the officers would not be enough to distinguish Smith to the extent that this court could find that the appellant reasonably believed that he could leave when the officers boxed-in his car and ordered him to exit it. Thus, it appears the officers arrested him when they stopped him in this manner, and as such they needed probable cause to do so lawfully.
Under the above circumstances, the officers did not have probable cause to arrest the appellant. There is no indication that they had any information linking the appellant to any drug activity. Their observations and the undercover buy gave them probable cause to arrest Allen and Hills, as they were both physically involved in the sale to the undercover officer. However, the only circumstance which tied the appellant to the drug sale was Allen’s entrance into the Jeep in which the appellant was sitting. One officer admitted he was not on the scene, but only monitored the sale via an audio transmission. He also admitted that when he pulled his vehicle in front of the appellant’s Jeep, he believed ■ Allen was still in the Jeep. The undercover officer who bought the crack from Allen testified he only saw Allen enter the Jeep as he (the officer) was leaving the scene. The only officer who actually saw Allen during his brief time inside the Jeep testified that he only saw Allen and the appellant speaking, and then he saw Allen leave the Jeep and the appellant drive away from the scene. The officer testified he was concerned that Allen might have passed the marked money | gto the appellant, but he admitted he did not see Allen giving anything to the appellant. The officer also testified that he thought the appellant might be another buyer. However, he admitted that after Allen left the Jeep, Allen did not go to Hills to get the cocaine, and that the appellant drove away just after Allen exited the Jeep. As such, although it is somewhat arguable that the appellant’s proximity to the undercover drug sale might have given the officers reasonable suspicion to stop the appellant, these circumstances did not constitute probable cause to believe the appellant was involved in Allen’s and Hills’ drug operation in any way. Thus, the officers did not have probable cause to arrest the appellant, and the cocaine the officers discovered after removing the appellant from the Jeep was unlawfully seized. The trial court erred by refusing to suppress the evidence.

CONCLUSION

Accordingly, Broussard’s conviction is reversed, his sentence vacated, and the case remanded.
CONVICTION REVERSED, SENTENCE VACATED AND CASE REMANDED.
BYRNES, J., DISSENTS WITH REASONS.

. Freddie Allen was charged in a separate count with the possession with the intent to *1258 distribute cocaine. He eventually pied guilty. His conviction and sentence are not the subject of this appeal.

. Although the minute entry of 19 June 1998 does not indicate the sentence is to be served without parole for five years, the transcript of this re-sentencing so provides. When there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983).