816 So.2d 1284 (2002)
STATE of Louisiana
v.
Paul BROUSSARD.
No. 2000-K-3230.
Supreme Court of Louisiana.
May 24, 2002.
Rehearing Denied June 21, 2002.
*1285 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Valentin M. Solino, Leslie P. Tullier, for Applicant.
Charles G. Wainwright, New Orleans, for Respondent.
PER CURIAM.
All members of the court of appeal panel agreed in the present case that the police "seized" respondent when the officers identified themselves, ordered him to stop, and boxed in his Jeep with their patrol vehicles, one positioned in front of respondent to bring him to a stop and the other positioned behind the Jeep to prevent him *1286 from backing out of the encounter and leaving the scene. No reasonable person under such circumstances would have felt free "to ignore the police presence and go about his business." Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991).
However, the court of appeal panel divided over the nature of the actual restraint imposed on respondent. For the majority, the police arrested respondent "when they stopped him in this manner, and as such they needed probable cause to do so lawfully." State v. Broussard, 99-2848, p. 8 (La.App. 4th Cir.10/4/00), 769 So.2d 1257, 1261 (citing La.C.Cr.P. art. 202). Because respondent's proximity to a drug deal conducted by two other persons with an undercover police officer did not provide probable cause to arrest him, although the seller had briefly joined respondent in the Jeep after the transaction moments before respondent left the scene and the officers closed on the vehicle after it had traveled only one block, the majority concluded that the trial court had erred in denying respondent's motion to suppress a packet of cocaine seized by the police from his pants pocket in a frisk of his clothing after the officers removed him from the Jeep. Broussard, 99-2848, p. 9, 769 So.2d at 1261. The court of appeal therefore reversed respondent's conviction and sentence for attempted possession of cocaine in violation of La. R.S. 40:979(F). Broussard, 99-2848 at 9, 769 So.2d at 1261. The dissenting member of the panel argued that the officers had conducted only an investigatory stop when they immobilized respondent's Jeep to prevent it from leaving the scene, that the officers had had an objective and particularized basis for suspecting respondent of criminal activity, and that the discovery of the cocaine packet in respondent's pants pocket fell within the "plain feel" exception to the warrant requirement recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Broussard, 99-2848 at 4-11, 769 So.2d at 1263-66 (Byrnes, J., dissenting).
We granted the state's application to reverse the decision below because we agree with the dissent that "[i]nherent in an officer's right to make an investigatory stop of an individual and to demand his name, address, and explanation of his actions is the right to detain the subject temporarily to verify information given or to obtain information independently of his cooperation." Broussard, 99-2848 at 4, 769 So.2d at 1263. The definition of arrest in La.C.Cr.P. art. 201 keyed to "an actual restraint of the person" does not provide a bright-line or workable rule for distinguishing arrests from investigatory stops because Louisiana adopted that definition, see 1928 La. Acts 2, § 1, art. 58, well before constitutional and statutory authority existed for detaining persons on less than probable cause to arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); La.C.Cr.P. art. 215.1. The use of actual restraint does not alone transform a street encounter between the police and a citizen into an arrest because an investigatory stop necessarily "involves an element of force or duress, temporary restraint of a person's freedom to walk away." State v. Salazar, 389 So.2d 1295, 1298 (La.1980); see 4 Wayne R. LaFave, Search and Seizure, § 9.2(d), p. 35 (3rd ed. 1996)("A stopping for investigation is not a lesser intrusion, as compared to arrest, because the restriction on movement is incomplete, but rather because it is brief when compared with arrest...."); United States v. Jones, 759 F.2d 633, 637 (8th Cir.1985)("The test is not ... whether a reasonable person would have felt free to leave under the circumstances: That concern marks the line between a fourth amendment seizure of any degree and a *1287 consensual encounter which does not require any minimal objective justification."); see also Terry, 392 U.S. at 21, n. 16, 88 S.Ct. at 1879 ("Obviously, not all personal [encounters] between policemen and citizens involve[] `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred.").
Like an arrest, an investigatory stop entails a complete restriction of movement, but for a shorter period of time. See United States v. Merritt, 736 F.2d 223, 229 (5th Cir.1984); State v. Bailey, 410 So.2d 1123, 1125 (La.1982). However, brevity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest. See United States v. Acosta-Colon, 157 F.3d 9, 18-19 (1st Cir.1998)("There is no question that the use of handcuffs, being one of the most recognizable indicia of a traditional arrest, `substantially aggravates the intrusiveness' of a putative Terry stop. Thus, when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.") (citations omitted); State v. Raheem, 464 So.2d 293, 296 (La.1985)("[W]hen the officers stopped the Cadillac, drew their weapons, ordered defendants out of the car, and had them place their hands on the vehicle, an arrest occurred."); see also Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)("In the name of investigating a person who is no more than suspected of criminal activity, the police may not ... seek to verify their suspicions by means that approach the conditions of arrest."); cf. United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985)(following stop of defendant's vehicle, police officer's approach with service revolver drawn and pointed upwards fell "well within the permissible range [of restraint allowed in an investigatory stop] in the context of suspects who are reported to be armed and dangerous.").
In State v. Zielman, 384 So.2d 359, 362 (La.1980), this Court held that the police not only seized the defendants but also arrested them without probable cause when the officers pulled into a service station with their lights flashing, boxed in the defendants' van with patrol units front and back, and illuminated the vehicle with a powerful spotlight. We thereby rejected the dissenting view that the officers had made only an investigatory stop of the vehicle on the basis of reasonable suspicion. Zielman, 384 So.2d at 365 (Marcus, J., dissenting). Whatever the merits of the analysis in Zielman under the particular facts of that case, we subscribe to the view that "an otherwise valid stop is not inevitably rendered unreasonable merely because the suspect's car was boxed in by police cars in order to prevent it from being moved, though sometimes the magnitude of such police activity will compel the conclusion [that] an arrest had occurred." 4 LaFave, Search and Seizure, § 9.2(d), pp. 36-37 (footnotes omitted); see, e.g., United States v. Tuley, 161 F.3d 513, 515 (8th Cir.1998)("Blocking a vehicle so its occupant is unable to leave during the course of an investigatory stop is reasonable to maintain the status quo while *1288 completing the purpose of the stop."); United States v. Edwards, 53 F.3d 616, 619 (3rd Cir.1995) ("The vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se."); Jones, 759 F.2d at 638 ("Blocking generally will be reasonable when the suspect is in a vehicle because of the chance that the suspect may flee upon the approach of police with resulting danger to the public as well as to the officers involved.").
In the present case, while the police action of boxing in the Jeep subjected respondent to actual restraint imposed by the officers, the encounter lacked other arrest-like aspects which might lead a reviewing court to conclude that a de facto arrest had taken place. The officers did not draw their service revolvers, did not handcuff respondent or confine him in a patrol unit, or force him to "prone out" on the ground before discovering the cocaine packet in his pants pocket. See State v. Tucker, 626 So.2d 707 (La.1993). Moreover, the blocking action reasonably anticipated respondent's reaction to a stop. When the lead vehicle driven by Officer Bardy cut him off, respondent put the Jeep into reverse and attempted to elude the police, creating a danger to the officers involved in the stop and to the general public in an area described by Bardy as "very highly populated ... with a lot of kids...." While the officers then ordered respondent from the Jeep, and helped him from the vehicle because he was still suffering the effects of a prior gunshot wound, the police may order the driver out of a vehicle even in the course of a routine traffic stop without subjecting the individual to a de facto arrest. Pennsylvania v. Mimms, 434 U.S. 106, 111-12, 98 S.Ct. 330, 333-34, 54 L.Ed.2d 331 (1977). We therefore conclude that the officers' conduct in this case did not exceed the permissible scope of an investigatory stop.
We also conclude that the officers had reasonable suspicion to detain respondent. The events leading to respondent's arrest began with the sale of a single rock of cocaine by Freddie Allen to undercover police officer Carkum in the 1600 block of North Villere Street in New Orleans. Allen obtained the rock from his niece who stood on the porch of a nearby residence. After the exchange, in which Carkum gave Allen a marked $20 bill, the officer walked back to his vehicle and noticed Allen climbing into the passenger side of respondent's Jeep parked nearby. Allen spent only moments in the Jeep before he got back out of the vehicle and respondent drove away. Neither Carkum nor any member of his back-up teams saw any activity transpire between respondent and Allen in the brief moments they spent together inside the Jeep. However, fearing that Allen may have given respondent the marked $20 bill, or conducted another transaction with respondent, and suspecting that they had uncovered a narcotics trafficking operation involving more than just two individuals, the back-up teams decided to detain Allen, his niece, and respondent simultaneously. Officers Bardy and Gay caught up with respondent in the next block and used their vehicles to immobilize the Jeep. Under these circumstances, the officers had a "`minimal level of objective justification'" for detaining respondent. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)).
With regard to the ensuing frisk of respondent, Officer Bardy testified that he knew from general experience as a police officer that narcotics and firearms have a known association, see United *1289 States v. Trullo, 809 F.2d 108, 113-14 (1st Cir.1987), and that he was conducting a stop in an area known for its drug trafficking. As the officer helped him out of the Jeep, respondent drove the point home by informing Bardy that he had been shot in the same area only a week before. Bardy also considered respondent's actions immediately after the officer jumped out of his patrol unit and approached the driver's side window to identify himself. Given his vulnerable position at the side of the vehicle, Bardy took respondent's attempt to back away as a "personal threat" to his safety as well as the safety of the other officers involved in the operation. The officer thus possessed an objective and articulable basis for conducting a self-protective frisk of respondent. Bardy also testified that he knew, on the basis of long years of experience in narcotics enforcement, from the feel of the lumps and the crinkle of plastic in respondent's pocket, that he had discovered rocks of cocaine and that he would place respondent under arrest even before he pulled the packet out of respondent's pocket. The officer had thereby acquired his evidence by lawful means. See Dickerson, 508 U.S. at 377, 113 S.Ct. at 2137("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.").
Accordingly, the decision of the court of appeal is reversed, respondent's conviction and sentence are reinstated, and this case is remanded to the district court for execution of sentence.
JUDGEMENT REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.