*946
 
 PER CURIAM.
 
 *
 

 11 On April 1st, 2008, Officer Todd Chad-dick of the Lake Charles police department and assigned to the Calcasieu Parish drug task force, was investigating a complaint from a probation officer who had once lived in the area about increased drug and gang activity on the 1000 block area of Giovanni Street in Lake Charles. Driving down Giovanni St in an unmarked green Chevy Tahoe, the officer observed a gray SUV in the parking lot of 1005 Giovanni Street with the driver’s side door open. A number of individuals were near the SUV, including two individuals standing in front of the SUV, and one individual standing outside of the passenger side door whom the officer recognized as a drug dealer in the area. Inside of the vehicle, the defendant Eric Guillory was seated in the driver’s seat, along with another individual in the passenger seat who was hanging out the passenger window which appeared to be open.
 

 Officer Chaddick, noting that the individuals appeared to be “exchanging something or concentrating on something between them”, requested backup and continued to observe the events unfold. At that point, the man standing outside of the passenger side door noticed the officer and mouthed the words “that’s the police.” He and several other individuals standing around the SUV in the parking lot then |2began walking off quickly. Believing he was witnessing a drug transaction, the officer then got out of the vehicle and approached the defendant in the SUV whom, upon approaching, he recognized as someone he had arrested on a previous drug charge in 2003 when the defendant sold drugs three times to an undercover officer.
 

 
 *947
 
 While Chaddick was approaching, the defendant and his passenger began attempting to clear something from the armrest of the vehicle. When Chaddick arrived at the SUV, he observed white crumbs on the armrest, a piece of U.S. currency in the center console, and observed that the passenger was physically shaking and that his eyes were very wide — “about to bulge out.” For his part, the defendant avoided eye contact with the officer.
 

 Believing the white crumbs on the armrest were the residue of crack cocaine, Chaddick asked the defendant to exit the vehicle. The defendant then exited with his back towards the officer, stuffing something into his front waistband as he exited. Unsure of what the defendant had stuffed into his waistband, and fearing it might be a weapon, the officer put his hands on the defendant’s waistband and pushed the defendant up against the vehicle. He patted the defendant down and felt a piece of plastic sticking out of the defendant’s front waistband. Believing this plastic bag contained drugs since it was “consistent with what they keep drugs in a lot of times” the officer removed it and discovered what appeared to be crack cocaine in the bag.
 
 [1]
 

 An arrest of the defendant followed. The search incident to arrest yielded no further apparent drugs on the defendant’s person. A search of the vehicle incident to the arrest, albeit without a warrant, yielded two rocks of crack in the back passenger | ;icompartment of the SUV that apparently had been swept off of the armrest earlier when the officer approached the vehicle.
 
 [2]
 

 The trial court granted the defendant’s motion to suppress the evidence seized from the SUV, finding that the protective frisk by the officer was unauthorized. The Court of Appeal denied the State’s writ, elaborating that while the protective frisk was authorized under the circumstances, the officer failed to articulate sufficient reasons why he believed the object he felt in the defendant’s waistband was contraband.
 

 We now grant certiorari and reverse for the following reasons.
 

 The officer was clearly permitted to observe the events in the parking lot that unfolded — his parking of his vehicle nearby and calling for backup did not, as the defendant has argued, trigger a
 
 Terry
 
 stop. Officers, of course, have the absolute right to approach and engage anyone in conversation — so long as they do not apply force to detain the individual.
 
 [3]
 
 This right necessarily implies the right to lawfully observe.
 

 The
 
 Terry
 
 stop was then initiated when the officer went beyond simply asking questions and observing the defendant — namely, the moment when the officer asked the defendant to exit his parked SUV. With regards to this
 
 Terry
 
 stop, the facts certainly gave rise to the necessary reasonable suspicion to initiate it. These
 
 *948
 
 facts included 1) a tip from a parole officer that there was increased drug and gang activity 14in the area, 2) that the area was a “high crime area and a place ... known for drug activity”, 3) the presence of a known drug dealer outside of the passenger side door of the SUV and a formerly arrested drug dealer sitting in the driver’s seat (the defendant), 4) the presence of several individuals around a single SUV “exchanging something or concentrating on something between them”, 5) the attempt of several individuals to flee upon one of the individuals noticing that a police officer was present, 6) the defendant and his passenger sweeping off the armrest quickly as the officer approached along with the residue of white crumbs that remained, 7) the passenger’s apparent condition that rendered his eyes bulging, and 8) the defendant’s unwillingness to look the officer in the eye.
 

 As the defendant exited the vehicle with his back to the officer, he began stuffing something into his waistband. Despite the trial court’s ruling, Officer Chaddick’s testimony clearly reflects a concern that the defendant was in possession of a weapon — the officer noted as follows: “When I removed him from the vehicle, he was trying to hide something from me. I didn’t know if it was evidence or a weapon, and I patted him down based on the fact that he could be hiding a weapon.” Moreover, since the defendant’s back was to the officer, his concerns and course of action were eminently reasonable and the protective frisk was proper.
 

 The officer described the protective frisk that ensued as follows, stating that he “felt the piece of plastic out of his front waistband, which is — I know consistent with what they keep drugs in a lot of times.” Upon feeling the plastic bag hanging out, and on belief that this bag contained evidence of a crime, the officer removed it and secured it. The Court of Appeal’s ruling as well as Judge Pickett’s dissent centered on whether the officer, in these statements, articulated sufficient reasons as 1 Bto why he believed the object in the Defendant’s waistband was contraband, and thus as to whether the “plain feel” exception applied.
 

 Recent cases from this Court support the notion that the plain feel exception applies when an officer feels a plastic bag containing a rock-like substance.
 

 In
 
 State v. Broussard,
 

 [4]
 

 police officers observed an undercover agent purchase a rock of cocaine with a marked $20 bill from an individual and watched as the individual briefly got into a vehicle with the defendant. Upon belief that the individual had given the defendant the marked bill, and suspecting a drug transaction involving several individuals, the defendant driver was soon detained under a
 
 Teny
 
 stop this court deemed proper. The defendant was then properly frisked by the officer out of fear that the defendant was carrying a weapon; this frisk resulted in the officer discovering “the feel of the lumps and the crinkle of plastic in the respondent’s pocket” and a belief by the officer that he had discovered rocks of cocaine, thus leading to the defendant’s arrest.
 
 [5]
 
 Under the “plain feel” exception established by
 
 Minnesota v.
 
 Dickerson,
 
 [6]
 
 this Court found the evidence properly seized and admissible.
 
 [7]
 

 Similarly in
 
 State v. Adams
 

 [8]
 

 a police officer’s valid protective frisk of the defen
 
 *949
 
 dant revealed a plastic protruding over the defendant’s waistband wrapped around thirty-one rocks of cocaine. This Court found that whether the officer had visibly seen this protrusion during the frisk or felt it during the protective frisk, either | nwas legally sufficient to support the evidence’s admissibility under either plain view or plain feel.
 
 [9]
 

 The one caveat in the current case before the Court is that the record does not show that the officer felt anything “rock” like within the plastic bag in the defendant’s waistband. Nonetheless, it is difficult to imagine a legitimate substance being kept within plastic wrapping in the waistband of a citizen; therefore, the plain feel of the plastic bag by the officer combined with the circumstances in the plain view of the officer leading up to the plain feel discovery of the bag were sufficient to trigger probable cause to seize the bag upon its plain feel. Upon seizure and recognition by the officer that the bag’s contents were a white powdery substance, probable cause for the arrest was triggered.
 
 [10]
 

 With regards to the warrantless vehicle search, the U.S. Supreme Court’s holding in
 
 Gant v. Arizona
 
 is the latest statement on the applicable law: “circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might also be found in the vehicle.’ ”
 
 [11]
 
 Given that the officer observed the defendant and his passenger sweep off something from the armrest of the SUV, with white crumbs remaining in his view, and given that the defendant was arrested for possession of 17crack cocaine, the same substance the officer had reason to believe was on the armrest (and actually was), it was reasonable for the officer to search the vehicle for the crack cocaine that was swept off the armrest as it constituted “evidence relevant to the crime of arrest.”
 

 DECREE
 

 For the reasons expressed herein, the trial court’s ruling granting the defendant’s motion to suppress is reversed and the matter is remanded for proceedings not inconsistent with this opinion.
 

 REVERSED AND REMANDED.
 

 KIMBALL, J., would grant and docket.
 

 *
 

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tem-pore,
 
 participating in the decision.
 

 [1]
 

 . Subsequent lab testing indicated that the plastic bag in fact did not contain crack cocaine. It is unclear what the substance actually was.
 

 [2]
 

 .
 
 Unlike the substance in the plastic bag, the substances found in the SUV were confirmed by lab report to be crack cocaine.
 

 [3]
 

 .
 
 State v. Johnson,
 
 01-2436 (La. 1/25/02); 806 So.2d 647, 648 (“The police ... have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime ... It is only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an ‘actual stop’ of the individual is ‘imminent.’ ”)
 

 [4]
 

 . 00-3230 (La.5/24/02); 816 So.2d 1284.
 

 [5]
 

 .
 
 Id.
 
 at 1289.
 

 [6]
 

 . 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334(1993).
 

 [7]
 

 .Broussard,
 
 816 So.2d at 1289.
 

 [8]
 

 .01-3231 (La 1/14/03); 836 So.2d 9.
 

 [9]
 

 .
 
 Id.
 
 at 14.
 

 [10]
 

 . While it seems quite reasonable for the officer to assume the substance he found was crack cocaine, the sale of a false controlled dangerous substance is also against the law— thus probable cause at this point is indisputable. La. R.S. 40:971.1(A) ("It shall be unlawful for any person to produce, manufacture, distribute, or dispense any substance which is represented to be a controlled dangerous substance and which is an imitation controlled dangerous substance, or any controlled dangerous substance which is a counterfeit controlled dangerous substance.") That the defendant was not charged with distribution of a false CDS is irrelevant to the officer's objective probable cause inquiry.
 

 [11]
 

 .-U.S.-,-, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (adopting the rationale of Justice Scalia's concurrence in
 
 Thornton
 
 v.
 
 U.S.,
 
 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)).