MAX N. TOBIAS, JR., Judge.
 

 hOn 19 February 2009, in separate cases arising out of the same arrest, the defendant, Jimmy Welch (“Welch”), was charged with possession of 3,4-Methylene-dioxymethamphetamine (MDMA/ Ecstacyx), a felony, and with possession of marijuana, a misdemeanor. Welch pled not guilty at his arraignment.
 

 On 26 May 2009, after receiving evidence on the defense’s motions, the trial court found probable cause, denied the motion to suppress evidence, and denied the motion to suppress statement.
 

 
 *444
 
 At the 11 August 2009 trial, Welch elected trial by judge in his felony matter and the two cases were tried together. At the conclusion of the trial, and before closing arguments, the defendant re-urged his previously filed motions. The trial court declined to revisit its rulings, noting that based on the testimony offered at trial, its ruling was correct. After hearing closing arguments, the trial court found Welch guilty as charged in both matters. Welch waived all legal delays and announced readiness for sentencing. As to the charge of possession of Ecstasy, he was sentenced to five years in the custody of the department of corrections. As to the charge of possession of marijuana, he was sentenced to a concurrent term of six | ^months in parish prison. The state then filed a multiple bill of information alleging Welch to be a quadruple offender.
 

 On 16 September 2009, Welch admitted the allegations of the multiple bill and was sentenced to twenty years in the custody of the defendant of corrections without benefit of probation or suspension of sentence. He filed notices of appeal in both cases, which the trial court granted. On 18 May 2010, this court consolidated the two appeals.
 

 Testimony offered at the motion hearing and at trial reflects that on 6 January 2008, Detective Jason Germann of the New Orleans Police Department (“NOPD”), Sixth District Narcotics Unit, along with Detective Kyle Hinrichs and Sergeant Ryan Lobrano, were engaged in a narcotics-based surveillance of the intersection of Willow Street and Jackson Avenue in New Orleans.
 

 Detective Germann related that he had been a member of the NOPD for twelve years and that he had been a detective in the Sixth District Narcotics Unit for seven years. He added that he is a federally commissioned Task Force Agent with the DEA.
 

 As nightfall approached, Detective Ger-mann observed the defendant, who was not the target of the initial investigation, after he appeared on the downtown side of Jackson Avenue near the front of a retail establishment called King’s Fashions. Welch was observed anxiously looking up and down the block, which is what drew Detective Germanris attention. Detective Ger-mann related that Welch appeared nervous, that his body posture was stiff, and that he appeared to be “looking for something that would scare him.”
 

 Welch then walked to what appeared to be an abandoned house adjacent to King’s Fashions. He reached under the front steps and withdrew a white plastic |sbag which appeared to contain a large object. While still nervously looking in all directions, Welch then stuffed the bag and contents underneath his sweatshirt.
 

 Detective Germann believed Welch was retrieving some sort of contraband from underneath the house. More particularly, from his experience, Detective Germann believed it possibly to be a weapon. At the motion hearing, Detective Hinrichs related that firearms are often concealed in areas right underneath a house where they can be maintained in close proximity to an individual but not directly on his person.
 

 After retrieving the item, Welch started looking around and walked off in a fast pace, “as if he had somewhere to be immediately.” He walked towards Willow Street and turned right in an uptown direction. Detective Germann then contacted Detective Hinrichs and Sergeant Lo-brano, informed them of his observations, and advised them to complete an investigatory stop.
 

 Detective Hinrichs testified that he was contacted by Detective Germann who re
 
 *445
 
 layed that due to his observations, he believed the defendant may have been armed with a weapon, and that they should perform a stop. Detective Hinrichs and Sergeant Lobrano were in separate vehicles. Traveling in the same direction as Welch, they proceeded up Willow Street and then stopped their vehicles adjacent to the defendant. Detective Hinrichs exited his vehicle, upholstered his weapon, and ordered Welch to the ground for safety reasons. Welch complied. Detective Hinrichs re-holstered his weapon and placed Welch in handcuffs, again for safety reasons.
 

 Detective Hinrichs testified that he immediately began a pat down for weapons and that as he began his pat down, Sergeant Lobrano reached under Welch’s sweatshirt and retrieved the plastic shopping bag.
 

 14While patting him down, Detective Hinrichs detected what he immediately believed to be marijuana packaging in Welch’s right front pants pocket. Even though he recognized it, Detective Hin-richs ignored the object so as to complete his pat down. While Officer Hinrichs was completing his pat down, Sergeant Lobra-no advised him that the bag contained a purse and that there was no gun. At that point, Welch stated something to the effect of “Gun, man, I ain’t got no gun man. All I got is some weed and some pills.”
 
 [2]
 

 Once Detective Hinrichs completed his pat down, he immediately retrieved the bag from Welch’s pants pocket- and confirmed that it was a tied plastic bag containing vegetable matter.
 

 Detective Hinrichs placed Welch under arrest for • possession of marijuana and searched him. During his search, he recovered five red pills tied in a plastic bag in Welch’s left pocket that subsequently tested positive for Ecstasy. ■ -
 

 ERRORS PATENT
 

 Review of the record for errors patent reveals none.
 

 DISCUSSION
 

 THE APPEAL IN N0.2010-0423
 

 Welch’s misdemeanor conviction for possession of marijuana appeal is not properly before this court. An appeal of a misdemeanor conviction in Orleans Parish Criminal District Court properly goes to the appellate division of Criminal [^District Court for the Parish of Orleans. La. R.S. 13:1337;
 
 [3]
 

 State v. Morel,
 
 95-0926 (La.App. 4 Cir. 5/1/96), 673 So.2d 1291. According
 
 *446
 
 ly, we transfer Welch’s appeal in the appeal bearing-docket number 2010-CA-0423 to the appellate division of the Criminal District Court for the Parish of Orleans for disposition in due course.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 Welch contends that the trial court erred in denying his motion to suppress the evidence, alleging three separate grounds as the basis for therefor. Per
 
 State v. Boyer,
 
 07-0476, p. 7 (La.10/16/07), 967 So.2d 458, 464: “The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects ‘[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... ’ U.S. Const, amend. IV. ‘The Fourth Amendment is not a guarantee against all searches and | (¡seizures, only those that are unreasonable.’ ” And it is the reasonableness of the intrusion that is the touchstone of any Fourth Amendment analysis, “balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman’s actions to his reason for stopping the suspect.”
 
 Id.,
 
 p. 19, 967 So.2d at 470.
 

 Initially, Welch contends that the police lacked reasonable suspicion to conduct an investigatory stop. He asserts that from the facts and circumstances an insufficient basis existed to conclude that he was committing or had committed a crime.
 

 In
 
 State v. Temple,
 
 02-1895, pp. 4-5 (La.9/9/03),.854 So.2d 856, 859-860, the Court set forth the standard for determining whether ah officer can lawfully detain a defendant:
 

 Although La.C.Cr.P. art. 215.1 permits an officer to stop a citizen in a public place and question him, the right to make such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense.
 
 See Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Andrishok,
 
 434 So.2d 389, 391 (La.1988). If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). Determining whether “reasonable, articulable suspicion” existed requires weighing all of the circumstances known to the police at the time the stop was made.
 
 State v. Williams,
 
 421 So.2d 874, 875 (La.1982).
 

 In making a brief investigatory stop on less than probable cause to arrest, the police “‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ”
 
 State v. Kalie,
 
 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting
 
 United States v. Cortez,
 
 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an ‘inchoate and unparticularized suspicion or “hunch.” ’ ”
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting
 
 Terry v. Ohio,
 
 392 U.S. at 27, 88 S.Ct. at 1883). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest.
 

 In determining whether the police possessed the requisite “ ‘minimal level of objective justification’ ” for an investigatory stop based on reasonable suspicion of criminal activity,
 
 Sokolow,
 
 490 U.S. at 7, 109 S.Ct. at 1585 (quoting
 
 INS v. Delgado,
 
 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts “must look at the ‘totality of the circumstances’ of each case,” a
 
 *447
 
 process which “allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ”
 
 United States v. Arvizu,
 
 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)(quoting
 
 United States v. Cortez,
 
 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981));
 
 see also State v. Huntley,
 
 97-0965, p. 1 (La.3/13/98), 708 So.2d 1048.
 

 Welch contends that his actions were equally consistent with innocent activity and that the officers’ decision to stop him was not adequately supported by reasonable objective inferences drawn from the particularized facts of the situation. At trial, Welch offered the explanation that the he had recently purchased the purse at the adjacent commercial establishment and was simply retrieving the item which he had secured under the steps of the adjacent house.
 

 We disagree with the defendant’s assessment of the facts. From an objective standpoint, Welch’s actions were inconsistent with innocent behavior, and the officers’ decision to conduct a
 
 Terry
 
 stop was supported by reasonable inferences drawn from his actions. From an objective standpoint, Welch’s. actions of nervously looking up and down the street before retrieving the bag from underneath the steps of an abandoned house, only to immediately conceal his ^possession of the bag by placing it underneath his clothing, was highly suspicious behavior and clearly indicative of possible criminal behavior.
 

 Retrieval of the bag from underneath the steps by itself may have appeared unusual; however, coupling that activity with Welch’s nervous glances to determine whether he was being watched as well as his immediate concealment of the bag was sufficient to raise his conduct from the level of simply unusual behavior to possibly criminal behavior.
 

 Assuming arguendo that the police had reasonable suspicion to conduct a
 
 Terry
 
 stop, defendant contends that when the officers handcuffed him they exceeded the permissible scope of an investigatory stop, and his detention constituted a full blown arrest for which the officers lacked probable cause. Indeed, an officer’s use of handcuffs poses a separate question from the reasonableness of the initial stop, “as a search or seizure ‘reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope.’
 
 Terry [v. Ohio],
 
 392 U.S.[1] at 18, 88 S.Ct. at 1878, 20 L.Ed.2d 889.”
 
 State v. Porche,
 
 06-0312, p. 7 (La.11/29/06), 943 So.2d 335, 339.
 

 We note that few Louisiana cases discuss the use of handcuffs during an otherwise .legal
 
 Terry
 
 stop; however, in
 
 Porche,
 
 the Court discussed the topic as follows:
 

 Inherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the .detention.
 
 [Muehler
 
 u]
 
 Mena,
 
 544 U.S. [93] at 99, 125 S.Ct. [1465] at 1470, 161 L.Ed.2d 299 (“ ‘Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.’ ”) (quoting
 
 Graham v. Connor,
 
 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72,104 L.Ed.2d 443 (1989));
 
 United States v. Perdue,
 
 8 F.3d 1455, 1462 (10th Cir.l993)(“Since police 19officers should not be required to take unnecessary risks in performing their duties, they are ‘authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the
 
 *448
 
 course of [a Terry] stop.’ ”) (quoting
 
 United States v. Hensley,
 
 469 U.S. 221, 235, 105 S.Ct. 675, 683-84, 83 L.Ed.2d 604 (1985)).
 

 Nevertheless, the use of handcuffs incrementally increases the degree of force used in detaining an individual.
 
 Mena,
 
 544 U.S. at 99, 125 S.Ct. at 1470 (“The imposition of correctly applied handcuffs on
 
 Mena,
 
 who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to detention in the converted garage.”);
 
 State v. Broussard,
 
 00-3230, p. 4 (La.5/24/02), 816 So.2d 1284, 1287 (“ ‘There is no question that the use of handcuffs, being one of the most recognizable indicia of a traditional arrest, substantially aggravates the intrusiveness of a putative
 
 Terry
 
 stop.’ ”) (quoting
 
 United States v. Acosta-Colon,
 
 157 F.3d 9, 18 (1st Cir.l998)(internal quotation marks omitted)). Thus, because the police conducting an investigatory stop “may not ... seek to verify their suspicions by means that approach the conditions of arrest,”
 
 Florida v. Royer,
 
 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983), the use of handcuffs must appear objectively reasonable “in light of the facts and circumstances confronting [the police],” taking into account “the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.”
 
 Graham,
 
 490 U.S. at 397, 109 S.Ct. at 1872;
 
 Broussard,
 
 00-3230 at 4, 816 So.2d at 1287 (‘“Thus, when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a
 
 Terry
 
 stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.’ ”)
 
 (quoting Acosta-Colon,
 
 157 F.3d at 18-19). If the added intrusion is not warranted under particular circumstances, a
 
 Terry
 
 stop may escalate into a de facto arrest requiring probable | incause to render it valid.
 
 United States v. Melendez-Garcia,
 
 28 F.3d 1046, 1053 (10th Cir.1994).
 
 [4]
 

 Porche,
 
 pp. 7-8, 943 So.2d 339-340.
 

 In
 
 Porche,
 
 the defendant/visitor arrived at the door of a residence where police were conducting a fast-paced investigation in which the ostensible victim/resident had turned into a suspect in a narcotics investigation. Upon arrival, Mr. Porche seemed very surprised (visibly shaken) to see the police presence at the apartment. He then expressed uncertainty over whether he was at the right apartment, which further aroused the officer’s suspicion. When the defendant was asked if he had any identification, he indicated that his was in his apartment, which was located in the same complex.
 

 
 *449
 
 At this point, the investigating officer decided to detain the suspect and placed him in handcuffs. The officer then asked the defendant if he would accompany him to his apartment to obtain his identification, and the defendant agreed. Inside the apartment, the officer observed contraband, which provided probable cause for the defendant’s arrest.
 

 After first examining the reasonableness of the officer’s decision to detain Mr. Porche and concluding that his decision was supported by the facts, the Court examined whether the officer’s use of handcuffs had elevated the detention beyond
 
 Terry’s
 
 permissible intrusion.
 

 | n Initially, the Court noted that that nothing in the officer’s testimony suggested that he was concerned that Mr. Porche was armed or violent. Indeed, the testimony did not suggest that Mr. Porche was even patted down for weapons. The Court noted the contrast in the severity of the situation to that in
 
 Muehler v. Mena,
 
 and concluded that although the inherent danger of the situation did not compare to that in
 
 Muehler,
 
 neither did the length of Mr. Porche’s detention in handcuffs prior to his being placed under arrest. In finding that the use of handcuffs was not unreasonable, the Court stated:
 

 Despite some concerns about the objective reasonableness of the police conduct, given the brevity of respondent’s detention in handcuffs before he was lawfully arrested, and the changing nature of the police investigation which had begun to focus on a possible link of respondent and Young to narcotics trafficking, and giving due deference to the decisions made in the field by police officers under the press of “tense, uncertain, and rapidly evolving” circumstances,
 
 Graham
 
 [v.
 
 Connor,
 
 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)], 490 U.S. at 397, 109 S.Ct. at 1872, we cannot say that Lieutenant Hoefeld’s conduct in securing relator’s hands to minimize any risk entailed by entering his apartment for his identification escalated the
 
 Terry
 
 stop into a de facto arrest unsupported by probable cause.
 

 Porche,
 
 pp. 10-11, 943 So.2d at 341.
 

 The circumstances of this case present a sharp contrast to those in
 
 Porche,
 
 where the police did not express any apparent concern over whether the subject was armed. Here, the detaining officers expressed a strong safety interest stemming from the defendant’s removal and concealment on his person of what they believed could have been a gun.
 

 In
 
 State v. Boyer, supra,
 
 the Louisiana Supreme Court sanctioned a pat down for weapons following a similar restraint of the defendant, who was forced to the ground and placed in handcuffs while the officer frisked him for weapons. In |
 
 KBoyer,
 
 the police were executing a search warrant at a mobile home for narcotics. The defendant was observed to be approximately twenty feet from the mobile home when the police arrived. He was holding a cell phone up to his ear and appeared to be talking. When the defendant observed the police, he lowered his phone and began frantically digging in his pocket. The officer ran towards the defendant yelling “police” and ordering the defendant to get to the ground and to remove his hand from his pocket; however, the defendant did not immediately comply, which caused the officer to take action. The officer testified that he believed the defendant may have had a small weapon in his pocket, noting that weapons are usually involved with drugs.
 

 Although the Court did not directly assess the reasonableness of the detention, the court sanctioned the stop and frisk noting that execution of a warrant may
 
 *450
 
 give rise to sudden violence or frantic efforts to conceal or destroy drugs. Citing
 
 Michigan v. Summers,
 
 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Court noted that when executing a search warrant the. “risk of harm to the police and to citizens is minimized if the officers routinely exercise unquestioned command of the situation.”
 
 Boyer,
 
 p. 18, 967 So.2d 470. Given the totality of the circumstances and based on the officer’s experience and training, the Court found the stop was proper. Further, the Court found that the officer’s search for weapons was justified stating:
 

 We find that a suspect’s hand in his pocket, under the circumstances a presented, supports a reasonable belief the suspect might have a weapon and Officer Guillot’s experience and training that searches of drugs often correlate with weapons provide a reasonable and objective basis to frisk this defendant.
 

 Boyer,
 
 p. 21, 967 So.2d at 472.
 

 | ^Factors affecting the reasonableness of Detective Hinrichs and Sergeant Lobra-no’s actions in handcuffing Welch and ordering him to the ground included their belief that he might have been armed. As in
 
 Boyer,
 
 the officers were involved in a narcotics investigation when their focus was directed towards the defendant’s actions. Also, as in
 
 Boyer,
 
 the officers were faced with a situation in which the defendant was engaged in the active concealment of an item, possibly a weapon. Because the stop took place on the street, public safety was also a central concern. Although the restraint of Welch was more significant than in
 
 Porche,
 
 there was a strong safety concern not present in
 
 Porche.
 
 Certainly, by briefly taking unquestioned command of the situation, Sergeant Lobrano and Detective Hinrichs were able to greatly reduce most if not all of the potential for danger.
 

 Taking into account that Welch was hastily leaving the area and that the officers were forced to make an immediate judgment on how best to effect a stop, and considering the inherent uncertainty of stopping an unknown subject believed to be armed, while giving due deference to the officers whose decisions were made under these circumstances, we find that the duration and level of force utilized is objectively reasonable under the circumstances and did not raise the
 
 Terry
 
 stop into a de facto arrest unsupported by probable cause.
 

 „ Finally, Welch argues that the trial court erred in denying his motion to suppress the evidence on the basis that the officer’s pat down for weapons after he had been handcuffed was unnecessary. He argues that once his arms were handcuffed behind his back, the officers had no reason to fear for their safety, which rendered their pat down for weapons unsupportable under
 
 Terry.
 

 We disagree. Welch was handcuffed so that it could safely be determined if he was armed and not simply to impair his ability to reach for or use a weapon, if 114he was armed. Under the circumstances, the use of handcuffs was objectively reasonable for that purpose. Under the scenario suggested by the defendant, the police would have been required to complete their investigation with the defendant in handcuffs only to then release a potentially armed and dangerous subject. This process would do nothing to protect the safety of the officers involved, and therefore it cannot be sanctioned.
 
 [5]
 

 
 *451
 
 In sum, we find that the police officers’ conduct in this instance was objectively reasonable and that Welch’s- Fourth Amendment right to be free from unreasonable searches and seizures was not violated. The trial court correctly denied the motion to suppress the evidence.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In Welch’s second assignment of error, he argues that his inculpatory statement — “All I got is some weed and some pills” — should have been suppressed as the product of a warrantless arrest without probable cause.
 
 See Dunaway v. New York,
 
 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), holding, that any confession obtained as the result of an illegal seizure must be suppressed. Because we have already approved the legality of Welch’s detention, the argument that the statement should have been suppressed as the result of an illegal seizure under the Fourth Amendment lacks merit.
 

 Welch suggests further that because he was not advised of his right to remain to silent before making the statement, his inculpatory statement was taken in violation of
 
 Miranda v. Arizona,
 
 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and should have |lsbeen suppressed on that basis. In
 
 Miranda,
 
 the Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during “custodial interrogation” without a prior warning.
 
 Id.
 
 at 436, 86 S.Ct. 1602. Custodial interrogation means “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of freedom in any significant way.”
 
 Id.
 
 at 444, 86 S.Ct. 1602.
 
 [6]
 

 However, it is well settled that “[s]pontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without
 
 Miranda
 
 warnings even where a defendant is in custody.”
 
 State v. Castillo,
 
 389 So.2d 1307, 1310 (La.1980);
 
 see also State v. Smith,
 
 00-1838 (La.5/25/01), 785 So.2d 815.
 

 Under the present circumstances, Welch’s remark regarding his possession of “weed and pills” did not come as a result of police questioning. Rather, the testimony establishes that this was a case of a spontaneous statement, voluntarily offered by the defendant. We find no indication that Sergeant Lobrano’s statement to Officer Hinrichs regarding his findings upon on examining the contents of the plastic ' shopping bag was offered in an attempt to elicit some type of response by Welch. Accordingly, because the statement was voluntary and. not given as a result of police interrogation or compelling influence, the trial court properly denied the motion to suppress the statement. The assignment of error lacks merit.
 

 CONCLUSION
 

 | ]fiFor the foregoing reasons, we affirm the defendant’s conviction and sentence in case bearing docket number 2010-CA-0422 and transfer the appeal of case bearing number 2010-CA-0423 to the Criminal District Court for the Parish of Orleans for disposition.
 

 APPEAL IN N0.2010-CA-0422 AFFIRMED; APPEAL IN NO.2010-CA-0423 TRANSFERRED TO CRIMINAL
 
 *452
 
 DISTRICT COURT FOR THE PARISH OF ORLEANS.
 

 [2]
 

 . The white plastic bag proved to be a "Target” shopping bag. At the motion hearing, Detective Hinrichs described the purse as a medium sized lady’s purse, approximately ten or twelve inches in size. After being arrested, Welch stated that he worked at King's Fashions, and that he had purchased the bag there earlier in the day.
 

 [3]
 

 . La. R.S. 13:1337 states:
 

 A. The Criminal District Court for the Parish of Orleans shall have appellate jurisdiction of all cases tried before the Municipal Court of New Orleans and the Traffic Court of New Orleans. Appeals from the municipal and traffic courts shall be on the law and the facts and shall be tried upon the records made and the evidence offered in said courts by the judge to whom the appeal shall be allotted. In all cases tried before the judges of the criminal district court in which an appeal does not lie to the supreme court, an appeal shall lie on questions of law and fact to two or more of the judges of the criminal district court, as prescribed by said court. The criminal district court shall adopt rules regulating the manner of taking and hearing and deciding such appeals.
 

 B. The Criminal District Court for the Parish of Orleans shall have general supervisory jurisdiction over the municipal and traffic courts of New Orleans and shall have authority to issue writs of habeas corpus in criminal cases, as well as such other writs and orders as are necessary in aid of the jurisdiction of the court. [Emphasis supplied.]
 

 [4]
 

 . In
 
 Muehler v. Mena,
 
 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the Court reviewed the reasonableness of a two to three hour detention of a woman in handcuffs while police officers conducted a search at a gang house for weapons and a wanted gang member pursuant to a warrant. Examining the circumstances surrounding the detention, the Court concluded that the officers’ use of handcuffs for the duration of the search was reasonable, "because the governmental interests outweigh[ed] the marginal intrusion.”
 
 Id.
 
 at 99, 125 S.Ct. 1465. Chief Justice Rehnquist explained that the length of a detention in handcuffs, even though somewhat lengthy, must be balanced against "the government’s continuing safety interest.”
 
 Id.
 
 at 100, 125 S.Ct. 1465.
 

 [5]
 

 . We note Detective Hinrichs' testimony to the effect that he had seen some "miraculous maneuvers," even by people whose arms were handcuffed behind them, which amplifies the fact that handcuffs alone do render a potentially dangerous subject completely safe.
 

 [6]
 

 . Furthermore, under
 
 Miranda,
 
 "interrogation” refers not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect.
 
 Rhode Island v. Innis,
 
 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980);
 
 State v. Abadie,
 
 612 So.2d 1 (La.1993).